**ADMIRAL–MERCHANTS MOTOR FREIGHT, INC., et al., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. A. No. C–2030.**

United States District Court,
D. Colorado.

Jan. 14, 1971.

George D. Michalson, Kansas City, Mo., Rice, Carpenter & Carraway by Roland Rice, Washington, D. C., Jones, Meiklejohn, Kehl & Lyons by Alvin J. Meiklejohn, Jr., Arthur R. Hauver, Denver, Colo., for plaintiffs.

Walker B. Comegys, Acting Asst. Atty. Gen. by John H. D. Wigger, Dept. of Justice, Washington, D. C., James L. Treece, U. S. Atty., Denver, Colo., for the United States.

Fritz R. Kahn, Gen. Counsel by Leonard S. Goodman, Associate Gen. Counsel, I. C. C., Washington, D. C., for the I. C. C.

Belnap, McCarthy, Spencer & Hardy, Washington, D. C. by Charles J. McCarthy, Richard J. Hardy, Washington, D. C., John J. Conway, Denver, Colo.,

for intervenor Drug & Toilet Preparation Traffic Conference.

Before LEWIS, Circuit Judge, and KERR and DOYLE, District Judges.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

### I. FACTS

This is an action seeking judicial review of a Decision and Order of the Interstate Commerce Commission entered in that Commission's Docket No. 34971, Increased Rates and Charges, From, To and Between Middlewest Territory, 335 I.C.C. 397 (June 5, 1969), as modified by Order of August 29, 1969. Plaintiffs assert that insofar as that order purports to or does order them to refund certain portions of a disputed rate increase schedule, that portion of the order should be set aside and annulled, and the enforcement of it enjoined, as beyond the statutory authority and jurisdiction of the Commission.

The transactions leading up to the present controversy began when certain motor carriers of property, including plaintiffs herein, which were parties to and participated in the tariffs of the Middlewest Motor Freight Bureau, Inc., filed and published schedules naming various increased rates and charges. These increases were scheduled to and did become effective on April 1, 1968. After various protests were filed to the increased rates, the Board of Suspension of the Interstate Commerce Commission declined either to suspend or investigate the increased rates and charges.[1] Upon reconsideration and referral to the entire Commission, it was ordered that an investigation be instituted into and concerning the lawfulness of said increased rates and charges. The Commission did not, however, order suspension of the new rate schedule.[2]

---

1. The matter at this stage was assigned Suspension Docket No. 47380.

2. Increased Rates and Charges, From, To and Between Middlewest Territory,

Thereafter, the Commission issued a number of procedural and intermediate notices and orders, including its Order of April 3, 1968,[3] specifying the evidence to be produced at a hearing before certain Hearing Examiners, which hearing was ordered to commence on May 20, 1968.

On April 12, 1968, the Department of Transportation and the General Services Administration, which agencies had protested the increases and had been notified and requested by the Commission to furnish certain evidence, requested that the procedural date set forth in the Order of April 3, 1968, be postponed for 90 days.[4] Other protestants apparently did not join in this request. By letter of April 22, 1968, respondents in the investigative proceedings, including plaintiffs herein, also requested "that the date provided in the order of April 3 be postponed for a period of 90 days so that respondents' evidence would be due on August 5, 1968, and the hearing, presently set for May 20, 1968, would be reset to commence on August 19, 1968. The reason for this request [was] the physical impossibility for respondents to compile the required data within the time allowed by the order."[5] In response the Commission issued an order which initially set forth the refund provision in controversy in the case at bar:

It is further ordered, That the time for filing the requested information and supporting data be, and, it is hereby extended to August 5, 1968; that the hearing be, and, it is hereby postponed to August 19, 1968, conditioned upon respondents compliance with the refund provision ordered below * * *.

3. I.C.C. No. 34971 (Order of March 29, 1968). The relevant portions of Section 216(g) of the Motor Carrier Act, 49 U.S.C. § 316(g), provide:

> Whenever there shall be filed with the Commission any schedule stating a new individual or joint rate, fare, charge, or classification for the transportation of passengers or property by a common carrier or carriers by motor vehicle, * * * the Commission is authorized and empowered upon complaint of any interested party or upon its own initiative * * * to enter upon a hearing concerning the lawfulness of such rate, fare, or charge, or such rule, regulation, or practice, and pending such hearing and the decision thereon the Commission, by filing with such schedule and delivering to the carrier or carriers affected thereby a statement in writing of its reasons for such suspension, may from time to time suspend the operation of such schedule and defer the use of such rate, fare, or charge, or such rule, regulation, or practice, but not for a longer period than seven months beyond the time when it would otherwise go into effect.

3. Exhibit B to the Complaint.

4. Prior to any formal request for a continuance, an informal meeting was held in the office of the Deputy Director of the Commission's Bureau of Proceeding—Mr. A. L. Corbin. According to the affidavit of Mr. J. D. Lawson, Executive Vice President of Middlewest Motor Freight Bureau at the time, Mr. Corbin asked Mr. Lawson at that meeting whether, if a postponement were granted, the carriers would agree to pay refunds, if the rate increases were not ultimately approved by the Commission. Both Mr. Lawson and counsel for the Middlewest Motor Freight Bureau responded that they had no authority to enter into any such agreement on behalf of the carriers and further stated their belief that the Commission lacked statutory authority to require refunds or to impose a refund agreement as a condition to the grant of a postponement. Affidavit of J. D. Lawson, Appendix B to Reply Brief of Plaintiff. Although Mr. Lawson states that no party requested the refund provision, Mr. John M. Cleary, Esq., also present at that meeting, states that the shippers took the position that they would have no objection to the continuance, if they could be assured that at the end of the proceeding refunds would be made to the extent the rates collected are not shown to have been just and reasonable. Affidavit of John M. Cleary, Intervenor's Exhibit C.

5. Letter from Mr. John Fessenden, Counsel for Respondents and Middlewest Motor Freight Bureau to Mr. Alvin L. Corbin of the I.C.C., April 22, 1968, Plaintiffs' Exhibit 1(b).

*And it is further ordered,* That respondents be and, they are hereby, ordered to make refunds to the shippers on any shipment moving after May 20, 1968, to the extent that the increases or any portion thereof under investigation herein are not approved by the Commission.[6]

Five days later, on May 1, 1968, respondents (including plaintiffs herein) petitioned the Commission for reconsideration of the Order of April 25, 1968. They challenged the refund provision on many of the same grounds urged now in the case at bar. Subsequently, however, they withdrew this objection to the refund condition, grounding it on the decision of the Commission in a similar petition, Docket No. 34978, *Pacific Inland Territory, Rate Increases, 1968.*[7] They further stated that evidence in support of the rates in the Middlewest Territory case could not be compiled by the original hearing date of May 20, 1968. This left the order of April 25, 1968, standing as issued. Subsequent to this withdrawal of the Petition to Reconsider, several protestants in the proceeding advised the Commission by letter that they were not satisfied with a mere withdrawal of the objection to the refund provision, as any guarantee of compliance with the Commission's refund provisions.[8] These objections proved to be prophetic.

No action was taken with respect to this issue until after the postponed hearing on the merits at which time the Commission issued its decision in the matter. In its Report and Order of June 5, 1969, the Commission found that the increased rates and charges "have not been shown to be just and reasonable", ordered them cancelled, and *"further ordered,* That, in accordance with the order entered herein on April 25, 1968, the respondents be, and they are hereby, required to refund to shippers the charges on shipments moving after May 20, 1968, to the extent that such charges included the increases herein found not shown to be just and reasonable." [9]

Thereafter, the respondents filed a petition to vacate that portion of the Or-

6. Order of April 25, 1968, Exhibit "C" to the Complaint.

7. Increased Rates and Charges, Pacific Inland Terr., 332 I.C.C. 845 (Feb. 13, 1969). According to Intervenor's Brief, respondents in that case refused to comply with a refund condition, and the Commission vacated the order granting a 90-day postponement of the hearing date. The Commission felt that respondents in that case should have been prepared and ready to submit evidence to prove the lawfulness of their proposed tariff changes when the schedules containing those charges were filed with the Commission. *See also,* General Increase, Middle Atlantic and New England, 332 I.C.C. 820 (Feb. 14, 1969).

8. For example, the following letter was addressed to Mr. H. Neil Garson, Secretary, Interstate Commerce Commission, signed by Mr. J.A. DuPont, Manager, Transportation Department, Lincoln Chamber of Commerce, May 7, 1968 (Plaintiffs' Exhibit 1):
Dear Mr. Garson:
This Protestant is not satisfied that the Respondents' letter, dated May 2, merely withdrawing their May 1, 1968 petition for reconsideration, is any guarantee of compliance with the Commission's refund provisions of its April 25, 1968 order.
\* \* \* If the Protested rates and charges are ordered canceled, we see a distinct possibility of the Respondents dragging the refund provision through every court in the land before making any actual refunds as contemplated by the Commission. Perhaps some sort of bond covering shippers' monies subject to possible refunds is in order.
Your Protestant believes that the shipping public is entitled to a specific commitment from the Middlewest Motor Freight Bureau that they will abide by the Commission's refund provision paragraph in its April 25, 1968 order. Unless such a commitment can be obtained from the Respondents, it is our position that the earlier procedural dates prescribed in Docket No. 34971 on April 3, 1968, should be reinstated so that this important investigation may promptly proceed.
Sincerely,

9. Increased Rates and Charges, From, To and Between Middlewest Territory, 335 I.C.C. 142 (June 5, 1969).

der of June 5, 1969, which required the payment of refunds, and sought reconsideration of the refund order and/or reopening of the subject proceeding for further hearing. Meanwhile, cancellation was made of the disputed increases on statutory notice, effective August 31, 1969, and simultaneously, on statutory notice, respondents filed new and higher increases of six per cent to become effective on September 1, 1969. Following various protests, the Board of Suspension declined to suspend or to investigate the new rate increases. On appeal, the entire Commission: (1) entered its order declining to suspend or investigate the September 1 increases, and (2) entered its order denying respondents' petition to reconsider and vacate the refund order. The Commission further ordered,

> that the respondents will hereinafter, in accordance with the said decision of June 5, 1969, make refund to shippers presenting their claims to the carriers supported by paid freight bills or other appropriate evidence.[10]

A second Petition for Reconsideration of the Order of June 5, 1969, as affirmed by the Order of August 29, 1969, was denied by the Commission by Order of October 27, 1969. Thus, the increased rates were collected from April 1, 1968 to August 31, 1969. The Order to Refund is, however, effective from May 20, 1968 to August 31, 1969.

## II. JURISDICTION

■ This being an action to enjoin or set aside an order of the Interstate Commerce Commission, jurisdiction is vested in the United States District Courts by 28 U.S.C. § 1336(a) and Section 17(9) of Part I of the Interstate Commerce Act, 49 U.S.C. § 17(9), the latter section being made applicable to Part II of the Interstate Commerce Act (Motor Carrier Act) by Sections 205(g) & (h) of the Motor Carrier Act, 49 U.S.C. §§ 305(g) & (h).[11] Jurisdiction of a three-judge district court is alleged under 28 U.S.C. § 2325, and such a court has been convened to hear the matter as provided by 28 U.S.C. § 2284.

The United States of America, as statutory defendant in this proceeding,[12] and the Interstate Commerce Commission (both defendants hereinafter referred to as the Government) have challenged the jurisdiction of this Court over the subject matter of this action and have challenged the propriety of a three-judge court.

It is to be noted though that the Government in questioning the jurisdiction of this Court to review the case did so as a preliminary matter. We have heard the case as a three-judge court, and the three participating judges have subscribed to the opinion and decision.

We are mindful that 28 U.S.C. § 2321 calls for a somewhat different review procedure in actions "for the payment of money or the collection of fines, penalties and forfeitures." However, we do not regard this case as an action for the payment of money. Its primary concern is the effort of the Commission to uphold and protect its jurisdiction.

It may possibly be that the decision of this Court will have some effect on the effort of the shippers here to obtain refunds. Nevertheless, the instant review is not to be classified as an action to enforce the payment of money or the collection of fines, penalties and forfeitures. The plaintiffs have brought the suit here seeking annulment of an order of the Commission. Because of the high importance of the case we feel duty-bound to entertain the suit and to determine it on its merits. We therefore re-

---

10. Increased Rates and Charges, From. To and Between Middlewest Territory, I.C.C. No. 34971 (Order of August 29, 1969).

11. See also Sections 10(a) & (b) of the Administrative Procedure Act, 5 U.S.C. §§ 702 & 703.

12. See 28 U.S.C. § 2322.

ject these questions concerning our jurisdiction.[13]

## III. ISSUE

■ We must decide whether an order of the Commission in which a rate increase is denied, which order directs repayment of interim rates, if determined to be invalid, and which refund order was entered by the Commission as a condition of granting an extension of time to the carriers at their request, is invalid and subject to a judgment annulling the same. We are not involved with the Commission's order denying the increase. We are limited to the propriety and validity of a conditional rate refund order, which order was tacitly or impliedly (by withdrawal of objection) accepted by the carriers, plaintiffs herein.

## IV.

All of the parties appear to be in agreement that the relevant statutory provisions do not vest the Commission with authority to order the payment of refunds. The basic statute, 49 U.S.C. § 316 et seq., requires motor carriers to establish "just and reasonable rates" to be charged to shippers of goods. These rates are established by filing with the Commission tariffs setting forth the rates, fares and charges to be applied and the publishing of these in accordance with the rules of the Commission. These rates go into effect unless the Commission suspends, cancels or otherwise prevents their becoming effective, and upon their becoming effective they become legal if not lawful rates.

There are remedies provided to aggrieved shippers. Indeed, the Commis-

sion itself under Section 216(g) of the Act, 49 U.S.C. § 316(g), may on its own initiative enter into a hearing concerning the lawfulness of the rate, fare, charge, etc. Pending such a hearing the Commission may from time to time suspend the operation of such schedule.

It is to be noted that there is a refund provision applicable to railroads. This is § 15(7) of the Act, 49 U.S.C. § 15(7). No similar provision is found in § 216(g) of the Act granting this kind of express authority with respect to the rates of motor carriers.

■ Similarly, under Part I of the Act there is a reparations procedure applicable to railroads, 49 U.S.C. §§ 8 and 9. Here there is, however, a procedure applicable to motor carriers, although it has not been invoked in the present case. This measure was adopted in 1965, and prior thereto the Commission had fashioned a reparations procedure without the aid of a Congressional statute. They based it on the theory that a common law remedy survived the passage of the Interstate Commerce Act. The court in which the action was brought referred the issue of the unreasonableness of the rates to the Commission. However, the Supreme Court voided this procedure in the case of T.I.M.E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959). It was held in the *T.I.M.E.* case that Part II of the Interstate Commerce Act gave no right to past unreasonableness of rates. Thereupon, Congress amended Part II of the Act so as to restore the reparations procedure which had obtained prior to the Supreme Court decision.[14] Under

13. We have considered United States v. I. C. C., 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949). The Supreme Court was there speaking of a wholly different kind of case. That had to do with statutory reparations. It was correctly held to be an action only for the collection of money.

14. The amendment is set forth in 49 U.S.C. § 304a(2), (5). Although the amendment does not explicitly set forth the procedure to be used in awarding reparations, the legislative history makes it

clear that Congress intended to restore the procedure formerly utilized by the Commission pursuant to the policies which it articulated in Bell Potato Chip Co. v. Aberdeen Truck Line, et al., 43 M.C.C. 337 (1944).

For example, the House Committee report states:

In effect, these sections would permit a court of competent jurisdiction to award reparations to persons injured through violations of the Interstate Commerce Act by motor carriers and

this the Commission had the authority to make an after-the-fact determination as to whether past rates alleged to be unlawful were indeed unjust and unreasonable, and also to determine the extent of the unreasonableness.[15]

It is abundantly clear, therefore, that Congress has not authorized the Commission to order refunds as a generally accepted procedure. It is also clear, however, that the Commission did not undertake to exercise any such power nor is this a reparations proceeding such as that which was condemned in the *T.I.M.E.* case. Indeed, we do not view the present action of the Commission as an effort to exercise *any* general authority. The order in question was instead issued incident to a request for a continuance and indeed was not unlike the exercise of the suspension power which the Commission has and had under 49 U.S.C. § 316(g). No doubt the Commission could have ordered the rates suspended at least for a period of time (seven months).

■ It is strongly suggested that there is a *common law* power of restitution here, and in support of that the Government cites S.E.C. v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L. Ed. 626 (1943). However, there the Securities and Exchange Commission was empowered to consider equitable principles in making its decision. As we view it, a legislative tribunal cannot exercise common law or equity jurisdiction unless this authority is expressly granted by the Congress. But in the present case the Commission did not undertake to apply substantive common law or equity

principles. The matter with which it was concerned, that is the granting of an extension of time, was purely procedural. A specific grant of equity jurisdiction was not therefore essential to the imposition of this condition.

An even stronger argument for refusal to annul the Commission's order is the doctrine of equitable estoppel. We have in mind the principle which imposes an obligation on a person to live up to his representations or conduct in circumstances where inequitable consequences would result to persons having the right to rely, and who in good faith did rely on the representations made.[16] Applied to the case at bar the Commission certainly relied on the carriers' withdrawal of their jurisdictional objection to the refund condition. The Commission's reliance was evidenced by its failure to vacate the order. It did not have to anticipate that the carriers would renege. The carriers' withdrawal of their timely objection was a positive act which evidenced willingness to go along with the condition imposed.

It can also be argued that there was a binding waiver on the part of the carriers resulting from their affirmative withdrawal of their objection. A principle similar to this was applied in Texaco, Inc. v. FPC, 290 F.2d 149 (5th Cir. 1961), where gas producers sought to have refund conditions vacated in temporary certificates of public convenience and necessity, which certificates had been awarded by the FPC. Here the producers had not contested the refund provisions at the time of the awards, but only after the FPC required that they

---

freight forwarders subject thereto. This would be accomplished in accordance with established judicial reference procedures under which the Commission would be called upon to aid the court by making necessary administrative determinations relating to the amount of reparations. This would restore a procedure formerly available to shippers which was set aside by the Supreme Court in 1959 by its decision in the *T.I.M.E.* case * * *.

H.R.Rep.No.253, 89th Cong., 1st Sess. 12 (1965)—Report to accompany H.R. 5401. See also S.Rep.No.387, 89th Cong., 1st Sess. 8 (1965)—Report of the Committee on Commerce to accompany S. 1727. For legislative history see 2 U.S. Code Cong. & Adm.News, p.2923 (1965).

15. 49 U.S.C. §§ 304a(2), (5) and 316(e).

16. Robinson v. Commissioner of Internal Revenue, 100 F.2d 847, 849 (6th Cir. 1939). There are, of course, narrower definitions of the concept.

be paid. In denying relief to the producers the court stated that the time for the producers to raise the question was before they accepted the certificates with the conditions attached. The FPC had general refund authority, but it does not appear from a reading of the case that they were exercising it in this instance, and the court's decision appears to have been based on the conditional issuance of the certificates.

The Court of Appeals for the Eighth Circuit has recently decided a case which is somewhat analogous to that at bar. Middlewest Motor Freight Bureau, el al. v. United States, 433 F.2d 212 (8th Cir., October 6, 1970). The question was whether shippers were entitled to *restitution* from carriers for rates charged during the existence of a court-imposed temporary restraining order, which restraining order prevented the operation of a Commission order cancelling carrier rates which were determined by the Commission as not shown to be just and reasonable. Although the Court of Appeals, requiring restitution in that case, viewed the power of the court to order restitution as concomitant with the traditional equity powers of the court to issue injunctions, it also held a rate that is not shown to be just and reasonable to be unlawful, at least from the time the Commission orders it cancelled. The court stated that requiring the shippers to resort to the statutory reparations procedure was requiring double litigation which was an unwarranted burden on the Commission's resources. The court further noted that allowing restitution was not permitting the Commission to accomplish indirectly what it could not accomplish directly, but was merely giving effect to the Commission's order of cancellation—an order which was clearly within its power. These latter considerations seem particularly applicable to our case.

We are unable in good conscience, in view of the circumstances presented, to annul the order of the Commission. The Commission was acting in good faith in granting the extension, and the carriers were at the time agreeable to acceptance of the benefits of such an extension order. Their present posture appears to us to be grossly inequitable and not deserving of court intervention. While we do not commend the procedure as one which should be or could be practiced, we do hold that the peculiar facts of this case, arising as they did, are such as to not justify the granting of the relief requested, namely annulment of the Commission's order and approval of the carriers' conduct.

The practical effect of this ruling is not before us since this is not an enforcement proceeding.

We conclude that the complaint and the cause of action herein be and the same are hereby dismissed.

Dated at Denver, Colorado, this 14th day of January, A.D. 1971.