**MONTGOMERY WARD & CO., Inc.,**
**Plaintiff,**

v.

**ANDERSON MOTOR SERVICE, INC.,**
**et al., Defendants.**

**Civ. A. No. 19459–3.**

United States District Court,
W. D. Missouri, W. D.

Aug. 13, 1971.

James F. Duncan, Watson, Ess, Marshall & Enggas and Wm. A. Voss, Kansas City, Mo., for plaintiff.

Donald J. Quinn, Kansas City, Mo., for defendants.

## ORDER TRANSFERRING CAUSE TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

WILLIAM H. BECKER, Chief Judge.

This is an action seeking to enforce an order for refund of rates made by the Interstate Commerce Commission in Increased Rates and Charges, From, to and Between Middlewest Territory, Docket No. 34971, 335 I.C.C. 397. In the complaint herein, it is alleged:

"The defendants, as members of the Middlewest Motor Freight Bureau, Inc., participated in tariffs published by it which became effective on April 1, 1968. These tariffs provided for increased rates and charges on truckload and less than truckload shipments between various points in the Middlewest Territory. The ICC did not suspend these new tariff schedules but instead instituted an investigation into their lawfulness.

"The ICC hearing on the lawfulness of the tariffs was ordered to begin on May 20, 1968. On request of certain parties this hearing was, by an Order dated April 25, 1968, postponed to August 19, 1968 . . . [on condition that refunds be made for any disapproved rates applied to shipments after May 20, 1968.]

\* \* \* \* \* \*

"The ICC issued a Report and Order on June 5, 1969 which found that the increased charges were not shown to be just and reasonable and ordered that they be cancelled on or before July 21, 1969. The Order further provided that the defendants were to make refunds to the affected shippers 'to the extent that such charges included the increases herein found not shown to be just and reasonable.'

. . .

"The July 21, 1969 effective date for the cancellation of the increased charges was subsequently extended to September 29, 1969. The defendants then cancelled the increased charges effective August 31, 1969.

"On January 26, 1970 sixty carrier members of the Middlewest Motor Freight Bureau, Inc. filed a complaint in the United States District Court for the District of Colorado, Civil Action No. 2030, seeking review of the ICC Report and Order of June 5, 1969, Docket No. 34971. That Court held on January 14, 1971 that the ICC could properly condition its Order of April 25, 1968 on the condition that the carriers refund to the shippers any increase which was not subsequently approved by the ICC. Admiral-Merchants Motor Freight, Inc. v. United States and Interstate Commerce Commission, [D.C.,] 321 F. Supp. 353 (1971).

"On March 24, 1971 the United States District Court for the District of Colorado entered a stay of its judgment in the *Admiral-Merchants Motor*

*Freight, Inc.* case, *supra,* pending the appeals filed by the motor carriers. The Court also restrained the Commission's orders in this proceeding to the extent they require or authorize the payment of refunds pending such appeals; but the Court added in its stay order the following:

'Nothing herein shall be construed as preventing members of the public or of the Government from initiating litigation to toll any statute of limitations which might ultimately be found applicable.'

\* \* \* \* \* \*

"Plaintiff paid excess charges to the defendants during the period between May 20, 1968 and August 31, 1969. The defendants have failed, refused and declined to make the refunds ordered by the ICC. Defendants have, therefore, been unjustly enriched. The defendants are required by law to refund these monies pursuant to both the Orders of the ICC dated April 25, 1968 and June 5, 1969, and established principles of law and equity."

The principal relief prayed for by plaintiff in the complaint is:

"That the Court adjudge, declare and decree that the defendants are required to refund to plaintiff the charges on shipments moving between May 20, 1968 and August 31, 1969, to the extent that such charges included increases found by the Commission in its Report and Order of June 5, 1969, not shown to be just and reasonable."

Defendants have moved to stay this action pending the outcome of the appeal of plaintiffs from the decision of the United States District Court for the District of Colorado. Therefore, on July 14, 1971, this Court entered its order directing the parties herein separately to show cause in writing why a declaratory judgment should not be entered binding the parties to abide the decisions made on appeal from the District of Colorado, reserving the right to reopen this case to seek conventional relief for failure to abide the declaratory judgment. In that order, the Court stated:

"From those facts [stated by defendants], it appears that, unless defendants propose to interpose different defenses in this action than will be asserted in the appeals which are currently pending, this Court, in enforcing the awards, will necessarily be bound by the decisions made on those appeals. In such a case, it would be proper to enter a declaratory judgment binding the parties to abide by the decisions on appeal reserving the right to reopen to seek conventional relief for failure to abide by the judgment.

"If the prospective appellate decisions adverted to by defendants in their motion would not be dispositive of this case, then there can be no good reason for staying this action and discovery on the different issues should commence."

In their response to the show cause order, defendants, on August 2, 1971, stated, in part, as follows:

"Defendants do propose to interpose defenses in this action and to raise issues herein which were not raised in the direct review proceedings, and which could not have been raised in those proceedings, and which are not in any way controlled by the decision in the direct review case. For example, Defendants will interpose in this enforcement case the defenses of statute of limitations and laches. They will interpose the affirmative defense that the Plaintiff has failed to meet certain specified conditions precedent to maintaining this action. They will interpose the defenses that Plaintiff is without standing to enforce the Interstate Commerce Commission order and that enforcement would result in confiscation.

"Defendants, in addition, will call upon this Court to determine the validity of the final order of the Interstate Commerce Commission entered in Docket No. 34971 unless the instant

action is stayed pending the final resolution by the Supreme Court of the United States of that question in the direct review proceeding docketed, before the United States District Court in and for the District of Colorado, the Tenth Circuit, and the United States Supreme Court, as Admiral-Merchants Motor Freight, Inc. et al. v. United States of America and Interstate Commerce Commission.

\* \* \* \* \* \*

"Only a complaint and a Motion for Stay have been filed in this proceeding to date. There is no evidence before the Court. Answers not having been filed by most of the defendants, the case is not even at issue. It is difficult to understand how a judgment, declaratory or otherwise, can be entered. . . . The extent . . . to which particular carrier-defendants are or may be bound by the decision ultimately rendered in the direct review proceedings in actions brought by shippers such as that presented here cannot conceivably be resolved or even effectively speculated upon until that final decision is rendered and becomes effective."

Together with the response, 32 of the 33 defendants move to dismiss the complaint "for lack of jurisdiction over the subject matter, for improper venue and for failure to state claims upon which relief may be granted."

In support of the motion to dismiss, defendants state that:

"Section 1336 of Title 28 merely gives the courts jurisdiction over actions to enforce ICC orders; it does not create a right in Plaintiff to bring such an action. Part II of the Interstate Commerce Act has no provision authorizing *this* type of enforcement suit.

"Likewise Section 1337 of Title 28 of the United States Code vests jurisdiction in this court only to the extent that the action arises out of the Interstate Commerce Act. No action, however, is authorized under Part II of the Interstate Commerce Act (which governs these defendants) permitting a shipper to bring an enforcement action in its own name against a motor carrier subject to Part II of the Interstate Commerce Act."

It is apparent from this contention, together with the contention that no claim is stated, just how dependent the issues in this action will be upon the outcome of the appeal from the decision in Admiral-Merchants Motor Freight, Inc. v. United States (D.Colo.) 321 F.Supp. 353. In that case it was noted that:

"there is a refund provision applicable to railroads. This is § 15(7) of the Act, 49 U.S.C. § 15(7). No similar provision is found in § 216(g) of the Act granting this kind of express authority with respect to the rates of motor carriers." 321 F.Supp. at 358.[1]

Nevertheless, the Court went on to hold that the ICC in fact had power to make the refund order, noting that an analogous result was reached in Middlewest Motor Freight Bureau v. United States (C.A.8) 433 F.2d 212, in which the Court permitted restitution of cancelled rates which were continued in effect during the existence of a court-imposed temporary restraining order. With reference to that case, the District of Colorado noted:

"The court [in the *Middlewest* case *supra*] noted that allowing restitution was not permitting the Commission to accomplish indirectly what it could not accomplish directly, but was merely giving effect to the Commission's order of cancellation—an order which was clearly within its power. These latter considerations seem particularly applicable to our case." 321 F.Supp. at 360.

---

1. The Court also said that:
 "It is abundantly clear, therefore, that Congress has not authorized the Commission to order refunds as a *generally* accepted procedure." (Emphasis added.) 321 F.Supp. at 359.
 Nevertheless, the Court refused to annul the refund order.

Thus, if the power of the ICC to issue the refund order is upheld on appeal from the *Admiral-Merchant*s case, *supra,* a federal district court will have subject-matter jurisdiction of an action to enforce the order under Section 1336, Title 28, United States Code, providing that:

"Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, enjoin, set aside, annul or suspend, in whole or in part, *any* order of the Interstate Commerce Commission." (Emphasis added.)

It therefore appears that the question of subject-matter jurisdiction has been, at least for the time being, resolved by the decision of the United States District Court for the District of Colorado. There is presently subject-matter jurisdiction under the decision of the United States Court of Appeals for the Eighth Circuit in Middlewest Motor Freight Bureau v. United States, *supra.*

 The objection to venue appears, however, to be well-taken. Under the provisions of Section 1398, Title 28, United States Code,

"(a) Except as otherwise provided by law, any civil action to enforce, suspend or set aside in whole or in part an order of the Interstate Commerce Commission shall be brought only in the judicial district wherein is the residence or principal office of any of the parties bringing such an action."

In this case, plaintiff alleges in the complaint that it,

"is a corporation organized and existing pursuant to the laws of Illinois and maintains its principal place of business at Chicago, Illinois, [and] is licensed to do business in the State of Missouri."

Under Section 1398, *supra,* however, it has been held that a corporation "resides" only in the judicial district of state of its incorporation, Zonolite Co. v. United States (W.D.Pa.) 209 F.Supp. 597, and that venue is not proper in a district in which neither the principal place of business is located nor the plaintiff is incorporated. Erie-Lackawanna Railroad Company v. United States (S.D.N.Y.) 279 F.Supp. 316, 324. The liberal venue provisions of the general venue statute, Section 1391(c), Title 28, United States Code, providing that venue is proper against a corporate defendant in any district "in which it is incorporated or licensed to do business or is doing business" do not apply to plaintiffs. Robert E. Lee & Co. v. Veatch (C.A. 4) 301 F.2d 434, cert. denied, 371 U.S. 813, 83 S.Ct. 23, 9 L.Ed. 2d 55; Wright, Law of Federal Courts, 2d Ed. § 42, p. 155, n. 43. Plaintiff cites Kalispell Lumber Co. v. Great Northern Ry. Co. (D.Mont.) 157 F. 845, holding that a suit to enjoin railroad freight rates until their legality can be passed on by the ICC is properly brought "in any federal district where the defendant can be found." This, however, is not a suit for injunction, but one to enforce an order of the ICC. Plaintiff also contends that venue is proper in this action because the general venue statute, Section 1391(b), Title 28, United States Code, placing venue in the district where all defendants reside or the claim arose, is applicable. Plaintiff asserts that jurisdiction can be asserted under Section 1337, Title 28, United States Code, and Section 304a, Title 49, United States Code, reinstituting the right to sue for "reparations" (defined in 2 U.S.Code Cong. & Admin.News 1965, pp. 2923, 2931, as "charges made for transportation in accordance with filed tariffs to the extent that the Interstate Commerce Commission subsequently finds them to have been unjust and unreasonable"), thus presumably avoiding the narrow venue provisions of Section 1398, *supra.* If the theory of Admiral-Merchants Motor Freight, Inc. v. United States, *supra,* is correct, however, and the Commission has the power itself to order refunds, this can only be considered an action to enforce the Commission's order within the meaning of Section 1398, *supra,* even if brought un-

der Section 304a, *supra,* or Section 1337, *supra.*[2]

Further, plaintiff states that it has no particular objection to transfer of this cause to the United States District Court for the Northern District of Illinois. In its brief, plaintiff states:

"It is immaterial to plaintiff whether this litigation proceeds in the Western District of Missouri or the Northern District of Illinois. Either district is equally convenient for plaintiff. However, it is assumed that defendants would regard the Western District of Missouri as more convenient to them and plaintiff believes that § 1391(b) makes the Western District of Missouri the correct district for venue purposes, . . .. If defendants are serious in their venue contention, and the Court agrees with the contention, the case should be transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1406."

It therefore appears that, even assuming that venue is proper in this district, this cause should be transferred to the United States District Court for the Northern District of Illinois under the provisions of Section 1404(a), Title 28, United States Code, for the convenience of the parties and witnesses in the interest of justice. It appears that, by plaintiff's stating that either this district or the Northern District of Illinois is "equally convenient" for it, and by defendants' professed preference for another forum in their raising of the venue objection, a "balance of convenience" is established as is sufficient to enable the court to transfer the cause under Section 1404(a), *supra,* as well as under Section 1406, Title 28, United States Code, permitting transfer to a district where venue is proper in cases in which venue is improper where the case has been filed, in the discretion of the Court.

■ This cause will therefore be transferred to the United States District Court for the Northern District of Illinois under Section 1406, Title 28, United States Code, and, alternatively, under Section 1404(a), Title 28, United States Code. In either case, it appears that the claim against the nonmoving defendant, Poplar Bluffs Express, should be transferred to the Northern District of Illinois for the same reasons.[3]

---

2. In Admiral-Merchants Motor Freight, Inc. v. United States (D.Colo.) 321 F. Supp. 353, 359, an action of this type was viewed as exclusive of the "reparations" action of Section 304a, Title 49, United States Code. See 321 F.Supp. at 359. The same opinion was expressed in Middlewest Motor Freight Bureau v. United States (C.A. 8) 433 F.2d 212. The Admiral-Merchants court characterized the *Middlewest* case, *supra,* as holding that:

"requiring the shippers to resort to the statutory reparations procedure [of § 304a] was requiring double litigation which was an unwarranted burden on the Commission's resources." 321 F. Supp. at 360.

Further, to bring a reparations action, the plaintiff would have initially to invoke the administrative processes of the ICC again. It therefore appears that, under the current law of this circuit, because of the order of the ICC herein relied on, only Section 1398, Title 28, United States Code, can be viewed as the applicable venue statute.

3. Although Poplar Bluffs Express has filed an answer, it does not admit venue, although admitting the allegations respecting its presence in Missouri. Further, the answer requests a judgment of dismissal. It is not clear that venue has thereby been waived. "Under Federal Rule 12, an objection to venue is timely if made in a pre-pleading motion under 12(b) or, if such a motion is not made, in the answer itself." 1 Moore's Federal Practice ¶ 0.146 [6], p. 1912. Even if Poplar Bluffs Express may be regarded as having waived venue by answering on the merits, however, it is apparent that, with respect to that defendant, this case may be transferred to the Northern District of Illinois under Section 1404(a), Title 28, United States Code, for the convenience of the parties and witnesses in the interests of justice. The transfer may be made on the Court's own motion. In re Protection Devices and Equipment, D.C., 297 F.Supp. 622; I-T-E Circuit Breaker Company v. Becker (C.A. 8) 343 F.2d 361.

It is therefore

Ordered that this cause be, and it is hereby, transferred to the United States District Court for the Northern District of Illinois.