**PULLMAN–STANDARD, A DIVISION OF PULLMAN INCORPORATED, Petitioner-Appellant,**

**v.**

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents-Appellees,**

**William M. Gibbons, Trustee of the property of the Chicago, Rock Island and Pacific Railroad Company, Intervening Appellee.**

No. 82–1051.

United States Court of Appeals, Seventh Circuit.

Argued June 11, 1982.

Decided March 11, 1983.

Abraham A. Diamond, Chicago, Ill., for petitioner-appellant.

Ceclia E. Higgins, I.C.C., Washington, D.C., for respondents-appellees.

Before WOOD, Circuit Judge, POSNER, Circuit Judge, and CAMPBELL *, Senior District Judge.

WILLIAM J. CAMPBELL, Senior District Judge.

This is an appeal by plaintiff, Pullman-Standard (Pullman), from the decision of the district court granting summary judgment for the defendants, the United States and the Interstate Commerce Commission (ICC). Pullman had sought review in the district court of four ICC orders, the last of which had denied Pullman reparations for certain switching charges it had been required to pay to the Rock Island and Pacific Railroad (Rock Island).[1] In two separate orders the district court dismissed a portion of the complaint and granted summary judgment as to the remaining claim. In the dismissal order, the court concluded that it only had jurisdiction to review the fourth ICC order, and the subsequent summary judgment upheld that fourth order. Pullman argues on appeal that the district court had jurisdiction to review all four orders of the ICC under 28 U.S.C. § 1336(a).[2] While jurisdictional issues permeate this case, it is uncontested that this Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291.

The procedural history of this case is, unfortunately, quite lengthy. It is also unfortunate that a detailed recitation of the procedural history is necessary to understand the issues in this case. On June 2, 1975, Pullman filed a complaint with the ICC claiming that a tariff provision eliminating certain reciprocal switching in the Chicago switching district by Rock Island was in violation of the ICC's orders in *Switching Rates in Chicago District,* 177 I.C.C. 669 (1931) and *Switching Rates in Chicago Switching District,* 195 I.C.C. 89 (1933) (hereinafter referred to as the *Switching* cases), and various provisions of the Interstate Commerce Act. Prior to the adoption of that tariff Pullman had not paid Rock Island a separate charge for switching service, under the premise that the charge was included in the rate assessed by the line-haul carrier. However, the tariff in issue provided that a fee would be charged for this service for shipments of rail passenger coaches from Pullman's 111th Street facilities. Pullman's complaint

---

* The Honorable William J. Campbell, Senior District Judge for the United States District Court for the Northern District of Illinois, is sitting by designation.

1. The district court granted Rock Island leave to intervene, and it has also appeared as intervening appellee before this Court.

2. 28 U.S.C. § 1336(a) provides:

(a) Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, in whole or in part, any order of the Interstate Commerce Commission, and to enjoin or suspend, in whole or in part, any order of the Interstate Commerce Commission for the payment of money or the collection of fines, penalties, and forfeitures.

sought an order from the ICC compelling Rock Island to cancel the tariff, to waive collection of charges billed, and to refund amounts collected. The Administrative Law Judge (ALJ) to whom the case was referred concluded that the tariff did not violate the orders in the *Switching* cases or any provision of the Interstate Commerce Act and therefore denied any relief. (This will be referred to as the First Decision.) Pullman filed a Petition for Further Hearing seeking to introduce additional evidence. This petition was denied (Second Decision). Pullman then brought an appeal to the Commission's Review Board. On March 21, 1977, the Board entered a report and order (Third Decision) which upheld, in part, the ALJ's decision. The order drew a distinction between intradistrict rail movements (those moving wholly within the Chicago switching district) and line-haul rail movements (those moving to points outside the Chicago switching district). The Board upheld the ALJ as to the line-haul movements but concluded that the tariff, as applied to intradistrict movements, violated the Commission's orders in the *Switching* cases. Therefore, the Commission ordered Rock Island to cancel the tariff provision and directed Pullman to submit a reparation statement.[3] Pullman submitted a statement, however it sought reparations for charges assessed for the line-haul movements and Rock Island denied liability. Pullman then sought an order compelling payment, but on September 18, 1978 Chairman O'Neal denied the request because the Third Decision had determined that the tariff was unlawful only as to intradistrict shipments (Fourth Decision).

On November 14, 1978, Pullman sought review of all four decisions of the ICC in this Court pursuant to 28 U.S.C. § 2321(a).[4] The ICC and the United States filed a brief arguing that the Court lacked jurisdiction to review the Third Decision because the appeal had been filed more than sixty days after that order became final. Rock Island submitted a brief contending that judicial review of the Fourth Decision must proceed initially in a district court pursuant to 28 U.S.C. § 1336(a). Pullman then moved to dismiss voluntarily the petition for review, which this Court granted on May 14, 1979.

On August 7, 1979, Pullman filed its complaint in the District Court for the Northern District of Illinois seeking review of all four ICC decisions. After receiving briefs addressing jurisdiction, Judge Crowley dismissed that portion of the complaint seeking review of the first three ICC decisions.[5] He concluded that review of those decisions was not within the jurisdiction of the district court because they involved more than simply the payment of money, *see* 28 U.S.C. § 1336(a). Subsequently, Judge Aspen entered an order granting summary judgment for the defendants, thus upholding the ICC's Fourth Decision. Pullman then filed this appeal.

Pullman's appeal does not attack the merits of the summary judgment order, but rather claims error in its predicate, the dismissal order. Pullman makes three arguments for the proposition that the district court erred in concluding that it lacked jurisdiction to review the Third Decision: (1) the Third Decision was an order for the payment of money and therefore reviewable by the district court under 28 U.S.C. § 1336(a); (2) even assuming that the Third Decision involved more than the payment of money, Pullman's complaint in the district

---

**3.** This decision concluded with the following notice:

> By this report and the order served concurrently, this proceeding is rendered administratively final pursuant to section 17 of the Interstate Commerce Act, as amended, and within the meaning of section 704 of the Administrative Procedure Act.

**4.** 28 U.S.C. § 2321(a) provides:

(a) Except as otherwise provided by an Act of Congress, a proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Interstate Commerce Commission shall be brought in the court of appeals as provided by and in the manner prescribed in chapter 158 of this title.

**5.** Pullman filed a direct appeal from Judge Crowley's order in this Court, No. 80-2447, *Pullman-Standard v. United States and ICC*, however the appeal was dismissed as premature, *see* Fed.Rule of Civ.Proc. 54(b).

court only raised the issue of monetary relief and thus was within the purview of 28 U.S.C. § 1336(a); (3) judicial review of an administrative decision must encompass the entire administrative record, not just the last order.

■ Judicial review of ICC orders is, of course, governed by statute. 28 U.S.C. § 2321(a) provides that jurisdiction for review of ICC rules, regulations, and orders lies in the courts of appeals, see fn. 4 supra. The Hobbs Act provides, in pertinent part, that the court of appeals' jurisdiction under § 2321 is exclusive, 28 U.S.C. § 2342(5).[6] The only exception to this general grant of jurisdiction is 28 U.S.C. § 1336(a) which provides for review in the district court of ICC orders "for the payment of money or the collection of fines, penalties, and forfeitures," see fn. 2, supra. The courts' jurisdictions under these statutes are mutually exclusive,[7] see Consolidated Rail Corporation v. ICC, 685 F.2d 687, 692 fn. 12 (D.C. Cir.1982) (and cases cited therein). This bifurcated appeal system is not a recent development, although prior to 1975 matters reviewable under § 2321 were heard by a three-judge district court with a direct appeal to the Supreme Court, see 28 U.S.C. § 2321 (1970 ed.).

In United States v. ICC, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949), the court addressed the question of whether an ICC order denying reparations should be heard by a one-judge district court or a specially convened three-judge district court. (At that time, 49 U.S.C. § 9 provided for enforcement of reparation awards in single-judge district courts, but was silent as to the proper forum for review of denials of reparations.) The legislative history indicated that Congress intended the accelerated appeal procedure of the three-judge court to be utilized for ICC orders of na-

tional or widespread interest, while the single-judge courts were intended to review ICC orders involving local and isolated issues. The court noted that cases involving only monetary relief normally would be only of local interest, Id. at 442, 69 S.Ct. at 1419. Furthermore, appeals from denials of reparations would involve the same parties, statutes, and claims as those involving reparations awards, Id. at 443, 69 S.Ct. at 1419. Therefore, the court held that appeals from ICC orders denying reparations should be heard in single-judge district courts.

In the case sub judice, the ICC argues that the principle to be derived from United States v. ICC is that:

> [T]he importance and effect of a[n] [Interstate Commerce] Commission decision, rather than its form calling for grant or denial of money payment, determines the proper reviewing court. ICC brief, p. 18 n. 10.

Some courts have adopted this type of test, see Admiral-Merchants Motor Freight, Inc. v. United States, 321 F.Supp. 353 (D.Colo. 1971) (three-judge district court), aff'd mem., 404 U.S. 802, 92 S.Ct. 51, 30 L.Ed.2d 37 (1971) (jurisdiction of appeal seeking annulment of ICC order in three-judge district court because of "the high importance of the case"); Empire-Detroit Steel Div. of Cyclops Corp. v. ICC, 659 F.2d 396 (3d Cir. 1981) (review of ICC orders denying reparations on legal or policy grounds is available by petition for review in the courts of appeals); see also, Island Creek Coal Sales Co. v. ICC, 561 F.2d 1219 (6th Cir.1977); Consolidated Rail Corporation v. ICC, supra, 685 F.2d at 697, 698 (Celebreeze, J., concurring). The Court of Appeals for the District of Columbia Circuit, however, has taken the position that,

> The nature of the ICC's order, not the difficulty, novelty, or general importance

---

**6.** 28 U.S.C. § 2342 provides in pertinent part: The court of appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of ... (5) all rules, regulations or final orders of the Interstate Commerce Commission made reviewable by section 2321 of this title.

**7.** However, the courts of appeals may directly review an ICC order for the payment of money if it also involves other types of relief, see ICC v. Atlantic Coast Line, 383 U.S. 576, 596–597, 86 S.Ct. 1000, 1012–1013, 16 L.Ed.2d 109 (1966) quoted infra; Bangor & Arrostook R. Co. v. ICC, 574 F.2d 1096 (1st Cir.), cert. den. 439 U.S. 837, 99 S.Ct. 121, 58 L.Ed.2d 133 (1978).

of the legal questions raised by the order, controls the question of review jurisdiction. *Consolidated Rail Corp. v. ICC, supra,* 685 F.2d 687, 694; *see also, Genstar Chemical Limited v. ICC,* 665 F.2d 1304, 1307 (D.C.Cir.1981), *cert. den. sub nom. Nitrochem, Inc. v. ICC,* [456 U.S. 905] 102 S.Ct. 1750 [72 L.Ed.2d 161] (1982). This Court has not taken a position on this issue.[8]

▇▇▇ We find it difficult to accept the ICC's. proposed test since it appears highly impractical and furthermore, was not mandated by *United States v. ICC, supra.* While the legislative history reflects that the two-tiered appellate system was designed to accelerate review of ICC orders of broad effect and significance, such a vague standard could not have been intended as a functional definition, *see Consolidated Rail Corp. v. ICC,* 685 F.2d at 694. While the purpose of statutory interpretation is the implementation of legislative intent, the first level of such an analysis is the language of the statute, *see Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 197, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976). When the terms of the statute in issue are unambiguous, judicial inquiry does not proceed to additional sources, except in rare and exceptional circumstances, *see, e.g. Consumer Product Safety Commission v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *United States v. Agrillo-Ladlad,* 675 F.2d 905, 908 (7th Cir. 1982). The language of § 1336(a) is precise, giving district courts jurisdiction to review ICC orders "for the payment of money or the collection of fines, penalties, and forfeitures." All other ICC orders are to be reviewed by the courts of appeals under the general jurisdictional statute § 2321(a). Reliance on the legislative history would be appropriate if the statutory language were ambiguous, *seé, e.g. United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 222, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952), or if literal compliance produced an absurd or unjust result, *see, e.g. United States v.*

*American Trucking Ass'n. Inc.,* 310 U.S. 534, 542–543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940); *Haggar v. Helvering,* 308 U.S. 389, 394, 60 S.Ct. 337, 339, 84 L.Ed. 340 (1940); but neither situation is present, nor even alleged, here.

In *United States v. ICC, supra,* the court was faced with a situation in which literal application of the statute in issue meant that jurisdiction for review of an ICC reparation order was determined by which party prevailed before the ICC. This clearly was an absurd result in view of the fact that awards and denials of reparations involved the same claims, parties, statutes, and issues. Therefore, resort to the legislative history was necessary to determine whether there was any basis for the distinction and, there being none, to resolve the problem in a manner consistent with congressional intent. While the legislative history indicated that the two-tiered appellate system was designed to provide for expeditious review of ICC orders of widespread effect, we find no language in the court's opinion that suggests that such a jurisdictional standard should be grafted onto the statutory language. The court's holding was succinctly stated:

> [W]e hold that judicial review of an order denying reparations does not require a three-judge court. 337 U.S. at 441, 69 S.Ct. at 1418.

▇▇ The difficulties of application inherent in the standard proposed by the ICC also persuade us that the test articulated in *Consolidated Rail Corporation v. ICC, supra,* is appropriate. The courts which have adopted a standard based on the effect and importance of the ICC order have not provided objective criteria for resolving the jurisdictional issue. Obviously, any determination as to the effect of a Commission order would be somewhat speculative since it would have to consider future applications of the decision. Additionally, the term "importance" lends itself more to the

---

8. Although this Court has reviewed ICC reparations awards, *see Central Illinois Public Service Co. v. ICC,* 659 F.2d 820 (7th Cir.1981); *Chicago & N.W. Transportation Co. v. United States,* 574 F.2d 926 (7th Cir.1978), jurisdiction was not in issue in those cases.

semantics of advocacy than the semantics of judicial resolution. If we were to adopt the test suggested by the ICC, practitioners would be put in the dangerous position of having to determine, based on imprecise criteria, the proper court in which to file their petitions for review. The courts would have to make the complex analysis of the effect and importance of the ICC order on a case-by-case basis. We cannot believe that Congress intended such an impractical scheme, especially in light of the statutory language. Therefore, we will adopt the more literal approach suggested in *Consolidated Rail Corporation v. ICC, supra:*

> The nature of the ICC's order, not the difficulty, novelty, or general importance of the legal questions raised by the order, controls the question of review jurisdiction. 685 F.2d at 694.

This standard is consistent with *United States v. ICC, supra,* and dicta in *ICC v. Atlantic Coast Line,* 383 U.S. 576, 596–597, 86 S.Ct. 1000, 1012–1013, 16 L.Ed.2d 109 (1966):

> [B]oth the § 16(2) action [for enforcement] and the § 17(9) action [for injunctive relief] may be heard and determined by a single district judge when the reparation order is not accompanied by a cease-and-desist order . . . [Citations omitted.] *See also* 383 U.S. at 585, 86 S.Ct. at 1007.

A jurisdictional test which focuses on the form of the ICC order complies more closely with the statutory language, provides a precise guide for the bench and bar, and will achieve the legislative intent in the vast majority of cases.

■ Applying the standard stated above, it appears clear that the Third Decision of the ICC was an order that involved more than the payment of money.[9] Pullman had sought, in addition to reparations, a cease and desist order from the ICC compelling

Rock Island to cancel the assailed tariff provision. This type of relief was specifically granted by the Commission in the Third Decision based upon its conclusion that the switching charges for intradistrict rail movements violated the ICC orders in the *Switching* cases. Therefore, the Third Decision was not simply an order for the payment of money (or the collection of a fine, penalty, or forfeiture) and was beyond the scope of the district court's jurisdiction under 28 U.S.C. § 1336(a), *see, ICC v. Atlantic Coast Line,* 383 U.S. at 596–597, 86 S.Ct. at 1012–1013, quoted *supra.*

■ Alternatively, Pullman argues that it only sought review in the district court of the reparations portion of the Third Decision and therefore its Petition for Review falls within the category of cases described in 28 U.S.C. § 1336(a). Pullman's request for relief in its district court complaint stated:

> WHEREFORE, plaintiff prays:
>
> (a) That, upon final hearing of this cause, the court adjudge and determine that the actions, findings, and conclusions of the Commission as set forth in its reports and orders of April 1, 1976, June 1, 1976, March 29, 1977, and September 18, 1978, (Exhibits "A", "B", "C" and "D") are unlawful and without support in and contrary to law and the evidence; that a decree be entered perpetually setting aside and annulling said reports and orders; and that the Court direct the Rock Island to pay to Pullman the sum of $139,742.26 plus interest and attorney's fees; and
>
> (b) That plaintiff have such other and further relief in the premises as the nature of the case shall require and as the Court deems proper.

We cannot agree that this request only put in issue the reparations portion of the ICC's

---

9. It is ironic that the ICC will prevail even though we do not adopt the jurisdictional test advocated in its brief. However, *Consolidated Rail Corp. v. ICC, supra,* was decided after the oral argument in this case and was submitted by the ICC as additional authority under Rule 11 (of the Rules of the United States Court of Appeals for the Seventh Circuit). Since discussion of additional authority is strictly limited by Rule 11 it is unclear whether the ICC was persuaded by Judge Wright's opinion. The ICC's cover letter does specifically note Judge Celebreeze's concurring opinion in that case.

Third Decision. Pullman sought to have the order declared unlawful and annulled, as well as seeking "other and further relief . . . as the Court deems proper." The issues involved in the cease-and-desist portion of the Third Decision are identical to those relating to the reparations request. Therefore, if the district court determined, contrary to the Commission's decision, that Rock Island's charges for intradistrict switching were unlawful it could not fail to address the cease-and-desist aspect of the Third Decision, *see Carbone Bros. & Co. v. United States,* 194 F.Supp. 79 (S.D.N.Y. 1961) (Even though the complaint did not explicitly seek injunctive relief, such request was implicit when reasonableness of current rates was attacked thereby precluding jurisdiction in single-judge district court.). Therefore, we cannot accept Pullman's characterization of its complaint as only raising the issue of reparations.[10]

Pullman's final argument is that, even if the district court only had jurisdiction to review the Fourth Decision of the ICC, judicial review of an agency's decision properly encompasses all the prior orders in that proceeding and not simply the ultimate order; quoting from *United States v. ICC,* 198 F.2d 958, 963 fn. 1 (D.C.Cir.1952),

> [I.C.C.] . . . decisions at every level become a part of the record and are properly before us on judicial review. Administrative Procedure Act, § 8(b), 5 U.S.C.A. § 1007(b); *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 493, 71 S.Ct. 456 [467], 95 L.Ed. 456. We have considered the entire record of the case in the course of our review, and have endeavored to give each portion of it "such probative force as it intrinsically commands." *Universal Camera Corp. v. N.L.R.B., supra,* 340 U.S. at page 495; 71 S.Ct. at page 468.

While we have no quarrel with the quoted language, we do not believe it supports the argument of the appellant. The court in that case was addressing the issue of the scope of the record, not the scope of jurisdiction. The portion of the Administrative Procedure Act cited by the court provided: "All decisions (including initial, recommended, or tentative decisions) shall become part of the record . . ." 5 U.S.C. § 1007(b), 60 Stat. 242 (1946).[11]

Thus, in the case *sub judice,* the record before the district court encompassed the entire administrative proceeding, from the filing of the complaint to the Fourth Decision. But, as discussed above, the district court had jurisdiction under 28 U.S.C. § 1336(a) to review only the Fourth Decision. The Third Decision was a final agency action, as stated in the order itself, *see* fn. 3 *supra,* and was subject to immediate judicial review, *see* 5 U.S.C. § 704. As discussed above, however, jurisdiction over it was vested exclusively in the courts of appeals, *see* 28 U.S.C. § 2321(a) quoted *supra,* fn. 4. Pullman failed to file a timely petition for review of the Third Decision in this Court. Therefore, that order of the ICC is no longer subject to judicial review.[12] To hold otherwise would violate the Hobbs Act, 28 U.S.C. § 2342, *see* subsection (5) quoted *supra,* fn. 6.

For the district court this procedural situation resulted in the administrative equivalent of the judicial doctrine of law of the case: those issues conclusively determined in the ICC's Third Decision were controlling and no longer subject to review in subsequent proceedings. This is precisely the manner in which the district court treated the case. In the dismissal order, the court

---

**10.** Based on our resolution of this issue we need not and do not reach the question of whether an ICC order is severable for purpose of review jurisdiction.

**11.** A virtually identical provision can now be found in 5 U.S.C. § 557(c)(3).

**12.** 28 U.S.C. § 2344 provides that an aggrieved party has sixty days to file a petition for review in the appropriate court of appeals. That time

limit is jurisdictional, *Microwave Communications, Inc. v. F.C.C.,* 515 F.2d 385, 388–89 (D.C. Cir.1974); *Chem-Haulers, Inc. v. United States,* 536 F.2d 610, 613–14 (5th Cir.1976); *Provisioners Frozen Food Express v. ICC,* 536 F.2d 1303, 1305 (9th Cir.1976); *B.J. McAdams, Inc. v. ICC,* 551 F.2d 1112, 1114 (8th Cir.1977); *State of New York v. United States,* 568 F.2d 887, 892 (2d Cir.1977).

ruled that it lacked jurisdiction to review the matters decided in the Third Decision (and previously addressed in the first two decisions); in the order granting summary judgment it followed the principles of the Third Decision in resolving the reparations issue.

Accordingly, we find no error in the judgment of the district court. AFFIRMED.