## RAILROAD YARDMASTERS OF NORTH AMERICA, Inc. v. INDIANA HARBOR BELT R. CO. et al.

### No. 9432.

Circuit Court of Appeals, Seventh Circuit.

March 2, 1948.

F. J. Galvin, of Hammond, Ind., Edward J. McLaughlin, of Chicago, Ill., Galvin, Galvin & Leeney, of Hammond, Ind., and McKnight, McLaughlin & Dunn, of Chicago, Ill., for appellant.

Robert McCormick Adams, Burke Williamson and Jack A. Williamson, all of Chicago, Ill., Owen W. Crumpacker and Frederick C. Crumpacker, both of Hammond, Ind., and Sidney C. Murray, of Chicago, Ill. (Adams, Nelson & Williamson, of Chicago, Ill., of counsel), for appellee.

Before MAJOR, KERNER and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This appeal is from an order of the District Court dismissing the complaint in an action brought to enforce an order of the National Railroad Adjustment Board. The complaint alleges that plaintiff as sole bargaining agent for all yardmasters employed by the corporate defendant entered into a contract with said defendant under date of April 1, 1944. Rule 7(a) of this contract fixed and established the seniority rights of all yardmasters, and among other things provided that any yardmaster subsequently appointed to a regular position should have seniority as of the date he first performed service as a yardmaster, with the proviso that such date must be subsequent to the date of the contract, to-wit, April 1, 1944.

The complaint alleges that the defendant railroad company breached the said contract by subsequently assigning to the defendant C. P. Barker a seniority date of December 12, 1941, in violation of Rule 7(a) of the contract because (1) Barker's name did not appear on any seniority roster in effect at the time the contract was entered into, (2) Barker had not been assigned to a regular position as yardmaster on December 12, 1941, and (3) the seniority date granted Barker was not subsequent to the date of said contract, to-wit, April 1, 1944.

The complaint further alleges that because of the wrongful seniority date assigned to Barker a dispute arose between the plaintiff and the defendant railroad company which was subsequently submitted to the National Railroad Adjustment Board for determination. A hearing was conducted by the Board, and on June 19, 1946 it made an award in favor of plaintiff, holding that the seniority date awarded Barker by the carrier was in violation of Rule 7(a) of said agreement. This award was followed, so it is alleged, by an order of the National Railroad Adjustment Board ordering the defendant rail-

road to make the same effective, and that upon its failure and refusal to comply the instant suit for enforcement was commenced. Attached to and made a part of the complaint is a copy of the contract entered into April 1, 1944, by and between plaintiff and the railroad defendant, and also attached to the complaint is Exhibit B, which contains the proceedings before the Adjustment Board and which includes what is designated as a "Statement of Claim," "Findings," "Award," and "Order."

Upon motions filed by both the railroad defendant and the defendant Barker, the court entered its order of dismissal which was predicated upon three grounds, namely, (1) the order of the Adjustment Board sought to be enforced fixed no time limit for compliance, (2) the award and order were too vague and indefinite for enforcement, and (3) the defendant Barker had no notice of the hearing before the Adjustment Board. The reasons assigned by the District Court for dismissal of the complaint constitute the contested issues here.

The issue as to whether the instant enforcement proceeding may be maintained upon an order of the Adjustment Board which fixes no time limit for compliance by the carrier presents a perplexing problem. We are aware of no case where the point has been directly raised and decided. We are required, therefore, to interpret the pertinent provisions of the Railway Labor Act. Sec. 153, Title 45 U.S.C.A., prescribes the powers and duties of the various Adjustment Boards therein provided for. Subdivision 1, Pars. (o), (p) and (q) are pertinent to the instant problem.

Par. (o) provides: "In case of an award by any division of the Adjustment Board in favor of petitioner, the division of the Board shall make an order, directed to the carrier, to make the award effective and, if the award includes a requirement for the payment of money, to pay to the employee the sum to which he is entitled under the award *on or before a day named*." (Emphasis ours.)

Par. (p) so far as now material provides: "If a carrier does not comply with an order of a division of the Adjustment Board *within the time limit in such order*, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises." (Emphasis ours.)

Par. (q) provides: "All actions at law based upon the provisions of this section shall be begun within two years *from the time the cause of action accrues under the award* of the division of the Adjustment Board, and not after." (Emphasis ours.)

The plaintiff contends that no time limit for compliance with the order is necessary because the award upon which the order is predicated does not include a requirement for the payment of money. Plaintiff, in support of this contention, relies solely upon the language of Par. (o). It does not mention or take into consideration either in its brief or reply brief the provisions of Pars. (p) and (q).

We think it must be admitted that Par. (o) standing alone is susceptible and perhaps would require the construction attributed to it by the plaintiff. No cases need be cited, however, in support of the well known rule of construction that all the pertinent provisions of an act must be considered in determining the intent of the legislative body.

We suppose that no one would claim that the beneficiaries of an award by the Adjustment Board have any right to enforcement except in the manner which Congress has provided. It must be obvious that Par. (o) provides no authority or means for enforcement. If that were the sole provision contained in the Act, plaintiff would be wholly without a remedy to enforce the award.

Plaintiff's right to enforcement, if it has any, as well as the court's jurisdic-

tion, if such there be, is contained in Par. (p). This is recognized in plaintiff's complaint where it is alleged "That jurisdiction of this court is based upon the provisions of Title 45, Section 153 (p), commonly referred to as the Railway Labor Act." By Par. (p) the beneficiary of an award is authorized to institute an action for enforcement of an order based upon such award only if the carrier has failed to comply with such order "within the time limit in such order." In view of this unambiguous language, we are not able to discern either the authority of the beneficiary of an award to seek its enforcement or the jurisdiction of the court to entertain such action in the absence of a time limit contained in the order. Admittedly, it is difficult to reconcile this apparent conflict between Pars. (o) and (p). It may be that it was intended under Par. (o) to leave it optional with the Board as to whether it would insert a time limit in an award other than for the payment of money but that the time element must be included in the order if the beneficiary was to have the right in case of non-compliance to proceed under Par. (p).

We think, however, we need not be too much concerned about Par. (o) because plaintiff's right to enforcement as well as the court's jurisdiction is dependent upon Par. (p), and clearly such authority and jurisdiction is conferred only on the contingency of non-compliance within the time limit provided in the order. It is our conclusion that an action for enforcement cannot be maintained upon an order which fixes no time limit for compliance.

This view is strengthened by the language of Par. (q), which provides that all actions upon an award shall be begun within two years " from the time the cause of action accrues under the award." This is consistent with the language of Par. (p), which requires that a time limit be fixed in the order. The cause of action evidently would accrue upon non-compliance at the time fixed. Thus, the beneficiary of the award could determine both the earliest and latest date an enforcement action could be instituted. On the other hand, the carrier could determine not only

when it was in default and subject to an enforcement suit but also when the limitation period for such suit would expire. If no time limit is fixed in the order, when would the two-year limitation period commence to run? If we assume that the carrier had a reasonable time to comply, the limitation period would not commence to run until there had been a non-compliance after the expiration of such reasonable time. Thus, the beneficiary of an award could not determine with any certainty either the earliest or latest date an enforcement suit could be commenced.

This brings us to the issue as to whether the award and order were so vague and indefinite as to preclude enforcement. The order sought to be enforced states: "The Indiana Harbor Belt Railroad Company is hereby Ordered to make effective Award No. 318, made by the Fourth Division of the National Railroad Adjustment Board (copy of which is attached and made part hereof), as therein set forth * * *."

The award referred to in the order reads: "Complaint disposed of per findings." Obviously, neither the order nor the award furnish any information either as to the controversy before the Board, its decision or what the defendant was required to do. Assuming, however, that the "findings" referred to in the award are incorporated therein, we look to the findings. The only findings which appear material read:

"The Division is here under the necessity of construing Rule 7(a) of agreement between the parties involving yardmaster class as the same be applied to the facts presented in this docket irrespective of any agreement existing with respondent carrier governing wages and working conditions of another craft or crafts.

"We find, as represented by petitioner, that the facts presented in this docket are contrary to the provisions of controlling Rule 7(a) of the Yardmasters' Agreement, and so hold."

Again, obviously, there are no facts disclosed in these so-called findings upon which an award could be based. What is meant by "facts presented in this docket" is not disclosed other than that they are

"as presented by petitioner." This takes us to the claim which is as follows: "The employees claim that the Carrier violated Rule 7 (a) of their Yardmasters Agreement in granting of seniority as Yardmasters to I. H. B. Yardmen, in order to settle a dispute between the Carrier and the Brotherhood of Railroad Trainmen, and as a result, two Yardmen were granted seniority datings on the Yardmasters seniority roster ahead of Yardmasters regularly placed thereon, and prays that the Board will find the Carrier violated Rule 7(a) of the Yardmasters agreement and order the Carrier to remove the names of the two Yardmen from their present standing on the roster and place them on it in accordance with the provisions of the seniority rule in the Yardmasters Agreement."

The most that can be said regarding this claim is that it reveals there was a controversy between the railroad yardmasters and the carrier as to seniority rights. The controversy arose because "two yardmen" were, according to the claim, improperly granted seniority rights, and it was requested that the "two yardmen" be deprived of such rights.[1] The claim does not name the "two yardmen" whom it was sought to have deprived of their seniority rights; in fact, they were not parties to the proceeding before the Adjustment Board and their names are no place mentioned, either in the claim, findings, award or order.

■ Par. (m) of the Act provides: "The awards * * * shall be stated in writing. A copy of the awards shall be furnished to the respective parties to the controversy * * *." In Par. (p) it is provided that "the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated * * *."

It appears that the Act contemplates an award predicated upon findings sufficiently certain and definite as to make a prima facie case in an enforcement suit. In Washington Terminal Co. v. Boswell et al., 75 U.S.App. D.C. 1, 124 F.2d 235, 241,

the court stated: "The burden of proof, in making a prima facie case, may be financial as well as procedural, and it may be heavy. The statute relieves the employee of this, at least to some extent, when he introduces the findings and order in evidence. Though they may not make his case finally, they do so initially. They also bring to the court the weight of decision on facts and law by men experienced in contracts, disputes and proceedings of this special and complicated character."

Another case which discusses the requirements as to the character of the award and findings required by the Act· is System Federation, etc. v. Louisiana & A. R. Co., 5 Cir., 119 F.2d 509, certiorari denied 314 U.S. 656, 62 S.Ct. 108, 86 L.Ed. 526. There, the court refused to enforce an award and in so doing stated (page 513 of 119 F.2d):

"The act contemplates not merely general conclusions, but precise and definite findings of fact and final and definite awards, capable of enforcement, not vague general outlines which must be filled in by the courts.

"Considering the suit then as purely a statutory suit upon the award, we think it clear that it contains neither definite findings of fact entitled to have the effect of prima facie evidence, nor an award capable of enforcement."

■■ We are of the view that it cannot reasonably be held that the award and findings in the instant case are sufficiently definite and certain as to make a prima facie case in favor of the plaintiff. Plaintiff necessarily cannot rely upon the findings and award but must offer additional proof in support of the allegations of its bill. Furthermore, we think the carrier is entitled to know from the order, award and findings what it is required to do. It is argued, and of course it may be true, that the defendant as a matter of fact had knowledge that the order called for the removal of Barker from the seniority roster. If so, it did not acquire such knowledge from the order, award or findings.

---

[1] It appears from the complaint in the instant suit that C. P. Barker and E. E. Matthews were the two employees involved. The latter died since the suit was filed so that Barker is the remaining individual defendant.

Surely it was not contemplated that the carrier's knowledge was to be acquired through some other source or means. It also seems reasonable to think that the defendant was entitled to an order which would protect it in the event of compliance. What authority did it have to demote Barker when he was not a party to the proceeding and was not named as the employee to be deprived of his seniority? Neither do we think the defendant was required to run the risk of a law suit (including attorney fees for the petitioner) merely to suffer an order against it which would afford protection upon compliance. It is our view that the award and order are too uncertain and indefinite to furnish the basis for the instant action.

Thus we agree with the lower court as to two of the grounds upon which its order of dismissal was predicated. As to the third—that is, that the proceeding before the Adjustment Board was defective because the defendant Barker was not a party and had no notice of the hearing—we find it unnecessary to discuss or decide.

The order appealed from, for the reasons stated, is affirmed.