**ALUMINUM COMPANY OF AMERICA,**
Plaintiff-Appellee,

v.

**ADMIRAL MERCHANTS MOTOR
FREIGHT, INC., et al., Defend-
ants-Appellants.**

Nos. 72–1264 thru 72–1266,
72–1505 thru 72–1512.

United States Court of Appeals,
Seventh Circuit.

Argued Oct 17, 1972.

Decided July 12, 1973.

Certiorari Denied Dec. 17, 1973.
See 94 S.Ct. 843.

Alvin J. Meiklejohn, Jr., Denver, Colo., Donald B. Levine, Chicago, Ill., for defendants-appellants.

Ellis A. Ballard, Chicago, Ill., for plaintiff-appellee.

Daniel J. Sweeney, Chicago, Ill., amici curiae.

Before DUFFY, Senior Circuit Judge, FAIRCHILD, Circuit Judge, and GRANT,* Senior District Judge.

GRANT, District Judge.

These are consolidated appeals by various defendant motor carriers from summary judgments entered in favor of the plaintiff-shipper, Aluminum Company of America, in separate enforcement proceedings brought by the shipper to obtain refunds of excess freight charges. The Interstate Commerce Commission had previously ordered the refunds to be paid by the defendant motor carriers to shippers such as the plaintiff and that refund order had been upheld by a three-judge court in Colorado and subsequently upheld by the United States Supreme Court on appeal per curiam. Admiral-Merchants Motor Freight, Inc. v. United States, 321 F.Supp. 353 (D.Colo. 1971), aff'd, 404 U.S. 802, 92 S.Ct. 51, 30 L.Ed.2d 37 (1971).

In the spring of 1968, Middlewest Motor Freight Bureau, on behalf of its members, including the appellant carriers, filed and published proposed rate increases to take effect on 1 April 1968. The I.C.C. had allowed the rates to go into effect on this date but, because of protests by various shippers that the increased rates would be unjust and unreasonable, had instituted an investigation, without suspension, of the lawfulness of the increased rates. The Commission ordered evidence to be filed and set the matter for hearing on 20 May 1968. Two government agencies and the appellants requested a continuance of the evidence filing date and the hearing date on the grounds that the evidence could not be prepared in time. The I.C. C. granted the carriers' request for a continuance and rescheduled the hearing for 19 August 1968. This continuance, however, was subject to the express condition that in the event that any of the increased rates were not ultimately approved by the Commission,[1] the carriers

---

* Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

1. The order granting the continuance read, in pertinent part, as follows:

   *It is further ordered,* That the time for filing the requested information and supporting data be, and, it is hereby extended to August 5, 1968; that the hearing be, and, it is hereby postponed to August 19, 1968, conditioned upon respondents' compliance with the refund provision ordered below . . . .

   *And it is further ordered,* That respondents be, and they are hereby, ordered to make refunds to the shippers on any shipment moving after May 20, 1968, to the extent that the increases or any portion thereof under investigation herein are not approved by the Commission. Increased Rates and Charges, From, To and Between Middlewest Territory, I.C.C. No. 34971 (Order of April 25, 1968).

would then be required to make refunds of all such increases collected on shipments moving after 20 May 1968. The appellant carriers had originally objected to the conditional refund provision but withdrew the objection after realizing that the Commission had, in similar cases, when confronted with a refusal of carriers to comply with a refund condition, denied the carriers' requested continuance of the hearing. On 5 June 1969 the Commission found that the increased rates and charges had not been shown by the carriers to be just and reasonable, ordered them cancelled, and reiterated the refund language of its original order granting the continuance of the hearing:

> *It is further ordered,* That, in accordance with the order entered herein on April 25, 1968, the respondents be, and they are hereby, required to refund to shippers the charges on shipments moving after May 20, 1968, to the extent that such charges included the increases found not shown to be just and reasonable. Increased Rates and Charges, From, To and Between Middlewest Territory, 335 I.C.C. 142 (June 5, 1969).

The appellants subsequently petitioned the Commission to reconsider and vacate the refund order. On 29 August, 1969, the Commission entered its final order denying the petition and further ordered the carriers, in accordance with the Commission's decision of 5 June 1969, to "make refund to shippers presenting their claims to the carriers supported by paid freight bills or other appropriate evidence."[2]

Plaintiff filed its complaint in the district court originally alleging claims for statutory reparations arising under 49 U.S.C. § 304a, with jurisdiction asserted under 28 U.S.C. § 1337. However, on 7 May 1971, the plaintiff moved for summary judgment asserting new claims for enforcement of the Commission's refund order pursuant to Section 16(2) of the Interstate Commerce Act, 49 U.S.C. § 16(2).[3] Plaintiff had alleged in its motion for summary judgment that the refund order of the Commission was a final administrative order subject to the provisions of Section 205(g) of Part II of the Interstate Commerce Act, 49 U.S.C. § 305(g), which provides in pertinent part as follows:

> Any final order made under this chapter shall be subject to the same right of relief in court by any party in interest as is now provided in respect to orders of the Commission under chapter 1 . . . .[4]

In effect, plaintiff argued, and the district court held, that Section 16(2) of Part I of the Interstate Commerce Act was incorporated into Section 205(g) of Part II of the Act, thereby providing plaintiff with a statutory remedy for enforcement of the Commission refund order.

Section 205(g) of Part II of the Interstate Commerce Commission Act, 49 U.S.C. § 305(g), provides that any final order made under Part II, which deals with motor carriers, "shall be subject to the same right of relief in court by any party in interest as is now provided in respect to orders of the Commission made under Chapter I

---

2. Increased Rates and Charges, From, To, and Between Middlewest Territory, I.C.C. No. 34971 (Order of August 29, 1969).

3. Section 16(2) of Part I of the Act, 49 U.S.C. § 16(2), provides in part as follows:
   > If a carrier does not comply with an order for the payment of money within the time limit in such order . . ., any person for whose benefit such order was made, may file in the district court

of the United States . . ., a complaint setting forth briefly the causes for which he claims damages, and the order of the commission in the premises. Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages . . . .

4. Part I of the Interstate Commerce Act concerns railroads whereas Part II deals with motor carriers.

(which deals with railroads)." Because no doubt exists that we are dealing with a final order made under Part II of the Interstate Commerce Act and because we have concluded above that the plaintiff is a party in interest to such order, we must, therefore, look to Part I of the Act to determine the scope of the plaintiff's rights.

\* \* \* \* \* \*

While no doubt exists that . . . Section [16] was designed originally to cover orders by the Commission in reparations situations, no reason appears why the valid order of the I.C.C. involved herein for the payment of money, which order clearly is covered under the language of the statute quoted above, should not also be deemed within the purview of this section. Aluminum Co. of Amer. v. Admiral Merch. Motor Frgt., Inc., 337 F.Supp. 674, 681 (N.D.Ill.1972).

The defendants, though denying any liability for a refund, stipulated the amount of refund of freight charges to which the plaintiff would be entitled in each case should the district court conclude that plaintiff was entitled to a refund under the order of the Commission. With this underlying factual stipulation, the district court proceeded to find the legal issues against the carrier and granted plaintiff's motion for summary judgment. 337 F.Supp. at 682.

Appellants assert numerous arguments on appeal, many of which were presented to and effectively disposed of by the district court. We shall only treat those arguments which we consider as having some residual merit.

■ Defendants contend, inter alia, that the Commission's refund language was entered in excess of its jurisdiction and, therefore, is unenforceable. Though recognizing the existence of the holding of the court below that the Colorado three-judge court had conclusively determined the validity of the refund or-

der, thereby precluding all argument on that issue, defendants argue that "the *defense* of invalidity of an order in an enforcement action is one which must be considered by the enforcement Court," citing United States v. Southern Ry., 250 F.Supp. 759, 767 (D.S.C.1966). However, as correctly noted by plaintiff-appellee, in the *Southern Ry.* case there had been no prior proceedings to review the order of the Commission sought to be enforced by the United States. In the instant case, the refund order has been subjected to review and its validity established by the Colorado three-judge court.

Defendants half-heartedly argue that the refusal of the three-judge panel to enjoin the Commission's refund order did not constitute a finding that the order was valid. The assertion of this argument requires, as the court below concluded, a "myopic reading of the opinion" of the Colorado three-judge court. 337 F.Supp. at 678. The statement of issues given by the three-judge panel negates any argument that the court was not concerned with the validity of the Commission's refund order:

> We must decide whether an order of the Commission in which a rate increase is denied, which order directs repayment of interim rates, if determined to be invalid, and which refund order was entered by the Commission as a condition of granting an extension of time to the carriers at their request, is invalid and subject to a judgment annulling the same . . . . *We are limited to the propriety and validity of a conditioned rate refund order*, which order was tacitly or impliedly (by withdrawal of objection) accepted by the carriers, plaintiffs herein. (Our emphasis.) Admiral-Merchants Motor Freight, Inc., *supra*, 321 F.Supp. at 358.

■ Admittedly, some of the defendant-carriers whose appeals have been consolidated with the instant appeal were not named plaintiffs in the Colora-

do action and thus an argument might be made that, as to them, res judicata does not apply. However, as argued by the plaintiff-appellee, those defendant-carriers who were not named plaintiffs in the Colorado proceedings were undoubtedly in privity with the 60 named carrier-plaintiffs, particularly since all of the carriers involved were members of the Middlewest Motor Freight Bureau, Inc., and therefore are still bound under the doctrine of res judicata.[5] Moreover, we are persuaded that the doctrine of stare decisis would also be applicable. We need only cite and adopt the following language of the district court:

> The Supreme Court of the United States, however, has affirmed a decision which states that all carriers who were represented by the Middlewest Motor Freight Bureau, Inc., who were involved with the rate increase involved in ICC Docket No. 34971, and who withdrew their objections to the refund order have waived their objections and are estopped from contesting its validity. Based upon this Supreme Court decision and upon the fact that no suggestion is made that these few carriers were not part of the larger group who withdrew their objection to the refund order, these carriers, notwithstanding their lack of involvement in the Denver case, are estopped from so contesting the validity of the refund order because, under the doctrine of stare decisis, this court must accept the Supreme Court's holding that all the carriers involved with these tariff increase proceedings are estopped from contesting the validity of the Commission refund order. Aluminum Co. of Amer. v. Burlington Truck Lines, Inc., 342 F.Supp. 166 (N.D.Ill.1972).

The only real issue in the instant appeal is whether the Commission's refund order is enforceable as an order to pay money within Section 16(2) of the Interstate Commerce Act. As stated previously, the district court held that Section 205(g) of Part II of the Interstate Commerce Act, 49 U.S.C. § 305(g), incorporated Section 16(2) of Part I of the Act and thereby provided plaintiff with a statutory remedy for enforcement of the refund order. 337 F. Supp. at 681. Defendants argue that "since the Congress chose to not give the I.C.C. power to enter orders for the payment of money against motor carriers (there being no Sections 8, 9 or 13(1) in Part II of the Act) there was no reason to incorporate a provision for enforcement of such orders into Part II of the Act." Defendants further argue that there is a complete lack of any evidence indicating a Congressional intent to create, in Part II of the Act, causes of action for shippers against motor carriers. They note that (a) the legislative history of § 305(g) is devoid of any such Congressional intent; (b) the Commission has made numerous attempts to influence Congress to pass legislation similar to Sections 8, 9, 13(1) and 16 to be added to Part II; and (c) there is not a single case in which Section 305(g) was utilized to create a cause of action by incorporation of Section 16. Defendants also place considerable reliance upon T.I.M.E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959) in which the United States Supreme Court held that the Motor Carrier Act did not provide shippers with a statutory right to collect reparations from carriers for recovery of allegedly unreasonable past rates.[6] In par-

---

5. See excellent discussion by Judge Hunter in Proctor and Gamble Company v. Byers Transportation Company, Inc., 355 F. Supp. 547 (W.D.Mo.1973).

6. Shippers were subsequently granted a limited right to reparations against motor carriers when Congress amended § 304a of Title 49 in 1965. See generally, 1965 U.S.Code Cong. and Admin.News, p. 2923.

ticular, defendants rely upon the following statements:

The very provisions of Part I, and their counterparts in Part III, which give a right of action to shippers against carriers for damages incurred by carrier violations of the Act and provide the mechanics for the enforcement of that right are conspicuously absent in the Motor Carrier Act. Thus, whereas § 8 of Part I provides that "any common carrier subject to the provisions of this chapter [who] shall do . . . any act . . . in this chapter . . . declared to be unlawful . . . shall be liable to the person or persons injured thereby for the full amount of the damages sustained . . .," Part II has no comparable provision. Again, whereas § 9 of Part I gives an injured shipper the right to sue in the I.C.C. or in the Federal District Court, Part II contains no comparable provision. In addition, §§ 13(1) and 16 of Part I give a shipper claiming reparation the right to proceed in the Commission and to enforce his reparation award in the courts, and Part II contains no comparable provisions. 359 U.S. at 470–471, 79 S.Ct. at 908.

Defendants' reliance is misplaced. The *T.I.M.E.* decision is clearly distinguishable since it involved the shippers' right to reparations not their right to enforce a valid refund order. As stated by Judge Will in the court below, "in no sense did the *T.I.M.E.* decision consider the issue of whether, when the Commission does issue a valid refund order under Part II, the shippers for whose benefit the order was issued can proceed under Section 16(2) of Part I." [7] Admittedly, there is a dearth of legislative history and/or cases to which the court might look for assistance in interpreting § 305(g). Nevertheless, the plain language of the statute [8] provides ample basis for the district court's conclusion that the statute incorporates § 16(2) of Part I: "Any final order made under [Part II] shall be subject to the same right of relief in court by any party in interest as is now provided in respect to orders of the Commission made under [Part I]." 49 U.S.C. § 305(g).

We are mindful of the fact that the Commission, "as a generally accepted procedure," [9] does not have statutory authority to order the payment of refunds under the Motor Carrier Act and that the refund order in question was only justified on the basis of the Commission's procedural powers, coupled with the equitable estoppel and waiver conditions which were found to exist by the three-judge panel.[10] Moreover, we recognize that the Colorado court expressly stated that it was not determining the enforceability of the refund order and that it was not commending the procedure, *i. e.*, the conditional refund order issued by the Commission, "as one which should be or could be practiced . . . ." [11] Nevertheless, the court did establish the validity of the order and its decision was affirmed by the Supreme Court. And, like the district court below, we know of "no reason . . . why the valid order of the I. C.C. involved herein for the payment of money . . . should not . . . be deemed within the purview of . . . section [16(2)]." [12]

Defendants assert that numerous unresolved and contested issues of material fact remained for decision when summary judgment was granted, including whether or not the rates involved were historically just or reasonable and the

---

7. 337 F.Supp. at 682.

8. United States Gypsum Company v. United States, 253 F.2d 738, 744 (7th Cir. 1958).

9. Admiral-Merchants Motor Freight, Inc., *supra*, 321 F.Supp. at 359.

10. *Ibid.*

11. *Id.* at 360.

12. 337 F.Supp. at 681.

validity of the Commission's "not shown" finding.

■ We question the relevancy of the historical reasonableness of the rates inasmuch as the Commission's original refund order, as noted by the plaintiff-appellee in its brief, "was conditioned on whether 'the increases or any portions thereof under investigation herein are not approved by the Commission.' Appendix 212," [13] rather than the historical reasonableness of the rates. More importantly, we note, with reference to all of the alleged unresolved issues of material fact, that the defendant carriers failed to file any counter-affidavits even though Section 16(2) states that "the findings and order of the commission shall be prima facie evidence of the facts stated therein . . . ." [14] The district court correctly considered the defendants' failure to file counter-affidavits in support of their claim that they did meet their burden of proof before the Commission as being fatal to such claim.[15] We find without merit defendants' remaining contentions concerning the existence of other alleged unresolved issues of material fact.

Finally, defendants argue that several jurisdictional conditions precedent to the maintenance of an enforcement suit pursuant to Section 16 were not present. However, with one exception, we find little merit in any of the alleged "jurisdictional conditions precedent." As for the exception, defendants argue that no time had been set forth in the order on or before which compliance was required and that the absence of this jurisdictional prerequisite precludes enforcement, citing Missouri Pacific Railroad Company v. Austin, 292 F.2d 415, 417, 418 (5th Cir. 1961) and, in particular, Railroad Yardmasters v. Indiana Harbor

Belt R. Co., 166 F.2d 326, 329 (7th Cir. 1948). The latter case involved an action brought to enforce an order of the National Railroad Adjustment Board issued under the Railway Labor Act. The Board had entered an award after an administrative hearing, in favor of the yardmasters' union, holding that the railroad had violated seniority provisions of the union's employment contract. The Board also ordered the railroad to make the award "effective". Upon the failure and refusal of the railroad to do so, the union commenced its enforcement suit.

The statute granting the right of enforcement read, in pertinent part, as follows:

If a carrier does not comply with an order of a division of the Adjustment Board *within the time limit in such order*, the petitioner . . . may file in the District Court of the United States . . . a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. (Our emphasis.) [16]

In affirming the district court's dismissal of the union's complaint, the reviewing court stated as follows with reference to the "time limit" language of the statute: "In view of this unambiguous language, we are not able to discern either the authority of the beneficiary of an award to seek its enforcement or the jurisdiction of the court to entertain such action in the absence of a time limit contained in the order." [17] The court proceeded to hold that the

. . . plaintiff's right to enforcement as well as the court's jurisdiction is dependent upon Par. (p), and clearly such authority and jurisdiction is conferred only on the contingency

13. Brief for Appellee, p. 22.

14. 49 U.S.C. § 16(2).

15. Aluminum Co. of Amer. v. Burlington Truck Lines, Inc., *supra*; Supp.Appendix 189–193; see Rule 56(e), F.R.Civ.P.

16. 45 U.S.C. § 153(p).

17. 166 F.2d at 329.

of non-compliance within the time limit provided in the order. It is our conclusion that an action for enforcement cannot be maintained upon an order which fixed no time limit for compliance.[18]

■ Appellants argue that because the statute in question contains almost identical language, the same interpretation and conclusion should be applicable, i. e., "that an action for enforcement cannot be maintained upon an order which fixes no time limit for compliance." We disagree. The refund order in the case at bar, while functioning as an order for the payment of money within the scope of § 16(2), is predicated upon the procedural authority of the Commission rather than any express statutory authority such as provided by § 16(1) of the Interstate Commerce Act or § 153(o) of the Railway Labor Act.[19] Thus, there was no statutory requirement that a refund order issued pursuant to this procedural authority contain a time limit for compliance.

We note also that in the *Railroad Yardmasters* case, a major reason attributed by the court for the statutory requirement that refund orders include a time limit for compliance was to ensure that both shippers and carriers could determine with certainty not only when the carriers were "in default and subject to an enforcement suit but also when the limitation period for such suit would expire."[20] However, in the case at hand, the defendant-carriers and the plaintiff-shippers could easily have determined these limitation periods since the applicable statute of limitations requires that "a complaint for the enforcement of an order of the commission for the payment of money shall be filed . . . within one year from the date of the order, and not after."[21] This statute of limitations also provides ample protection for the defendant-carriers against any stale claims shippers might now attempt to assert. For these reasons, we find the *Railroad Yardmasters* case distinguishable.

We remind defendants that we are concerned with plaintiff's "right of relief,"[22] i. e., its right to enforcement of the refund order, and not its compliance with technical requirements of questionable applicability. We find it inappropriate for the defendants who had initially agreed to comply, "impliedly (by withdrawal of objection)"[23] if not expressly, but later refused to comply, with the conditional refund order of the Commission, to now assert the Commission's failure to include a time limit for compliance in the refund order as precluding enforcement of the order. Having accepted the benefits afforded by the continuance of the rate hearing, defendants should now be required to provide the agreed-upon exchange—the *quid pro quo*.

The judgment of the district court is Affirmed.

---

18. *Ibid.*

19. Both of these statutory provisions, while expressly authorizing the appropriate administrative agency to enter refund orders, also explicitly require that the orders contain a time limit for compliance.

20. *Railroad Yardmasters, supra,* 166 F.2d at 329.

21. 49 U.S.C. § 16(3)(f).

22. 49 U.S.C. § 305(g).

23. 321 F.Supp. at 358.