**CONTAINER CORPORATION OF AMERICA and Montgomery Ward & Co., Incorporated, Plaintiffs-Appellants,**

v.

**ADMIRAL MERCHANTS MOTOR FREIGHT, INC., et al., Defendants-Appellees.**

**No. 72–1646.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1973.

Decided Dec. 11, 1973.

Certiorari Denied March 18, 1974. See 94 S.Ct. 1581.

Christopher J. Michas, Mark C. Curran, Chicago, Ill., for plaintiffs-appellants.

Donald B. Levine, Chicago, Ill., Alvin J. Meiklejohn, Jr., Arthur R. Hauver, Denver, Colo., for defendants-appellees.

Before CUMMINGS and STEVENS, Circuit Judges, and CAMPBELL,* Senior District Judge.

STEVENS, Circuit Judge.

This is an action in which two shippers seek to recover refunds for overcharges on shipments moving after May 20, 1968, and before September. 1, 1969, from several motor carriers. The district court thought the action barred by the one-year limitations provision of § 16(3)(f) of the Interstate Commerce Act, 49 U.S.C. § 16(3)(f). We do not agree.

Plaintiffs' claims are authorized by § 16(2) of the Interstate Commerce Act, 49 U.S.C. § 16(2),[1] as construed by this court in Aluminum Company of America v. Admiral Merchants Motor Freight, Inc., 486 F.2d 717 (1973). Only a few of the complex circumstances of this litigation are relevant for our decision.[2]

The refund obligation was originally described in an order entered in Docket No. 34971, the proceeding entitled "Increased Rates and Charges From, To and Between Middlewest Territory," on April 25, 1968.[3] On that date, acting on a request from the carriers and certain other parties, the Commission postponed a hearing on the lawfulness of the carriers' proposed rates conditional upon respondents' compliance with an order "to make refunds to the shippers on any shipments moving after May 20, 1968, to the extent that the increases or any portions thereof under investigation herein are not approved by the Commission."[4]

After a full hearing, on June 5, 1969, the Commission found that the carriers had not sustained their burden of proving that the proposed increases were just and reasonable, ordered the rates cancelled, and, in accordance with the conditional refund order entered on April 25, 1968, further ordered that the carriers "be, and they are hereby, required to refund to shippers the charges on shipments moving after May 20, 1968, to the extent that such charges included the increases herein found not shown to be just and reasonable."[5]

On August 29, 1969, the Commission denied a petition by the carriers to reconsider and vacate the refund provision of the June 5, 1969, order. The August 29, 1969, order supplemented the language of the June 5 order y directing the carriers to "make refund to shippers presenting their claims to the carriers supported by paid freight bills or other appropriate evidence."[6] The carriers

* Senior District Judge William J. Campbell of the Northern District of Illinois, sitting by designation.

1. Section 16(2) provides, in part:
"If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file . . . a complaint setting forth briefly the causes for which he claims damages, ˎand the order of the commission in the premises."

2. For a further description of the factual background of the litigation see Judge Will's opinions in Bela Seating Co. v. Advance Transportation Co., 344 F.Supp. 854 (D.C. 1972), and Aluminum Co. of America v. Admiral Merchants Motor Freight, Inc., 337 F.Supp. 674 (D.C.1972). See also Admiral Merchants Motor Freight, Inc. et al. v. United States, 321 F.Supp. 353 (D.Colo.1971),

affmd. 404 U.S. 802, 92 S.Ct. 51, 30 L.Ed.2d 37, rehearing denied 404 U.S. 987, 92 S.Ct. 443, 30 L.Ed.2d 371.

3. At oral argument, counsel for the plaintiffs stated that the carriers agreed to this condition in order to obtain a continuance of the hearing date which had originally been set for May 20, 1968.

4. See final paragraph of the order which is attached to the complaint as Exhibit 1.

5. 335 ICC 142, 151 (Ex. 2 to the complaint).

6. In our opinion in Alcoa, supra, we described the August 29, 1969, order as the Commission's "final order." That reference was merely descriptive and did not purport to resolve a dispute as to the date the carriers' obligation became enforceable for purposes of the statute of limitations. Similarly, our decision in the present case on the date of finality of the Commission's order

filed another petition for reconsideration which the Commission denied on October 27, 1969.

The carriers then sought judicial review of the validity of the Commission's order. On January 26, 1970, the carriers filed a complaint in the United States District Court for the District of Colorado seeking a declaration that the Commission order was invalid, and an injunction against enforcement of the refund obligation. On June 19, 1970, that court granted a motion for a temporary restraining order; enforcement of the Commission's order was stayed until further order of court. Except for a period of about seven weeks, a stay order was in effect until the judicial proceedings were terminated in both the United States Supreme Court and the United States Court of Appeals for the Tenth Circuit. On December 7, 1971, the Supreme Court denied rehearing of its affirmance of the decision of the three-judge court in Colorado upholding the Commission's order; the stay of the ICC order was lifted on December 27, 1971. On January 7, 1972, the Secretary of the Interstate Commerce Commission filed a formal notice advising interested parties that its refund order "is now fully effective and enforceable at the suit of the affected shippers."

Section 16(3)(f) of the Interstate Commerce Act provides:

"A complaint for the enforcement of an order of the commission for the payment of money shall be filed in the district court or the State court within one year from the date of the order, and not after."

Plaintiffs filed their complaint in the present case on April 27, 1971, well before judicial review of the Commission's order had been completed, but more than a calendar year after the Commission had entered its order directing the refund. The question before us is, when did the Commission's order become final for purposes of § 16(3)(f)? The defendants argue that the date of the order is June 5, 1969, the date on which, after a full hearing, the Commission found that the carriers had not sustained their burden of proving their proposed rate increases were just and reasonable.

The plaintiffs offer alternative theories. First, they suggest that "within one year from the order, and not after" means one year from the date fixed for compliance with the Commission's order, and not one year from the time the Commission issues its order. Since the Commission did not prescribe a date on which the carriers would become obligated to pay, specifying rather that the obligation would arise when shippers presented carriers with paid freight bills or other evidence, the dates on which they presented their bills [7] are the determinative dates, provided that they acted within a reasonable time.

Alternatively, the plaintiffs argue, in accord with the reasoning of Judge Will in Bela Seating Co. v. Advance Transportation Co., *supra* [8] that the stay of the Commission's order granted in Colorado tolled the statute of limitations, because the Commission's order was unenforceable during the pendency of the stay.[9]

■ We think that none of those arguments offers the most reasonable interpretation of the statute in the circumstances of this case. In our opinion

---

for limitations purposes does not decide the date upon which interest commenced to accrue on the refunds.

7. The bills were presented early in 1971. Brief for appellants at 4.

8. We are advised that a similar decision was rendered in an unpublished opinion in Container Corporation of America and Montgomery Ward & Co., Inc. v. Hart Motor Ex-

press, Inc., D.Minn., November 20, 1972. Reply brief for appellants, at 1–4.

9. At oral argument, counsel for the plaintiffs offered a third argument. They suggested that the statute of limitations was tolled by the filing of a class action on June 15, 1970, in Appleton Electric Co. v. Advance United Expressways in the District Court for the Northern District of Illinois.

the "date of the order" within the meaning of § 16(3)(f) is the date on which the litigation prosecuted by the carriers to obtain judicial review of the Commission's order was completed. For that litigation was in effect a continuation of the carriers' efforts to persuade the Commerce Commission itself to modify or set aside its original refund order.

In this case, the judicial proceedings did not result in any material change in the Commission's order. However, it was possible that the carriers might persuade the reviewing court to set aside, annul, or sustain, in whole or in part, the order of the Commission.[10] Had the order been changed, an aggrieved party might not even have been able to prepare or file a proper action until after the court's decision became final. It would be anomalous to hold that a Commission order is final before judicial review is completed if, but only if, review leaves the Commission's order undisturbed.

No statutory policy would be served by requiring shippers to incur the expense and inconvenience of filing protective suits prior to the termination of the judicial proceedings initiated by the carriers to review the legality of the Commission's order.[11] This conclusion is buttressed by the basic policy to ensure uniformity in treatment of shippers. See Midstate Horticultural Co. v. Pennsylvania Railroad Co., 320 U.S. 356, 361,

64 S.Ct. 128, 88 L.Ed. 96.[12] This policy would not be served by allowing recovery to shippers who were prudent enough to file claims during the period of uncertainty, and denying recovery to those who justifiably awaited the final determination of the order's validity and enforceability.

■ It might be suggested that, since an order of the Commission does achieve a finality to which the statute of limitations applies if judicial review is not taken, time should be computed from the date of the Commission's order and judicial review should merely toll the statute for the period of its pendency. Such a rule would effectively shorten the time Congress has authorized for plaintiffs to prepare and file their lawsuits. During the pendency of judicial review, which, as this case demonstrates, may last for a period of years, a suit which had been partially prepared may atrophy: employees change jobs, different counsel may be retained, and pertinent records may be refiled or needed for other purposes. To require plaintiffs in complex matters either to commence protective litigation, or to act within a matter of months or weeks, is inconsistent with the congressional decision to allow shippers one year in which to file suit to enforce a final order of the Commission. In our opinion, the carriers' obligation to refund the excess charges did not "begin to enjoy the shelter of the stat-

---

10. *Cf.* 28 U.S.C. § 1336(a).

11. In support of their motion for a stay of the Commission's order pending appeal to the United States Supreme Court, the carriers made the following statement:

"The stay sought herein is necessary also, in order to prevent irreparable injury and damage to that portion of the shipping public with which the Plaintiffs were doing business between the dates of May 20, 1968, and September 1, 1969. These shippers would, otherwise, have to calculate and file claims for the respective amounts due them pursuant to the Commission Order, and, in the event that the Commission Order were ultimately found invalid, would have to repay those amounts to the carriers involved; both

such actions by the shippers would, of course, involve considerable expense not recoupable by them from any source."

See pages 3–4 of Motion for Stay filed on March 5, 1971, in the United States District Court for the District of Colorado in Civil Action No. C–2030.

12. The policy of § 16 to secure promptness in collection claims is entirely consistent with our conclusion. The carriers' adamant resistance to performance of their obligation to refund the over-charges rendered inapplicable any statutory concern with "promptness in collection" prior to the determination of judicial proceedings. Inaction of the shippers prior to that date did not result in any postponement of the time when the refunds would actually be collectible.

ute of limitations"[13] while they were prosecuting an action under 28 U.S.C. § 1336(a) to set aside or annul, in whole or in part, the Commission's order. We therefore hold that § 16(3)(f) did not begin to run until the judicial review sought by the carriers was concluded and the stay which had been entered by the district court in Colorado was lifted.

It follows that the instant case was filed by plaintiffs even before the applicable statute of limitations began to run. The order dismissing the complaint is reversed and the case remanded for further proceedings.

13. The quotation is from Woods v. Stone, 333 U.S. 472, 474, 68 S.Ct. 624, 625, 92 L.Ed. 815.