WESTERN COAL TRAFFIC LEAGUE, Petitioner,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,

Association of American Railroads, Intervenor.

AMERICAN PAPER INSTITUTE, INC., Petitioner,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,

Association of American Railroads, Intervenor.

CAROLINA POWER & LIGHT COMPANY, and Virginia Electric and Power Company, Petitioners,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,

Association of American Railroads, Intervenor.

CAROLINA POWER & LIGHT COMPANY, and South Carolina Electric & Gas Company, Petitioners,

v.

UNITED STATES of America and Interstate Commerce Commission, Respondents,

Association of American Railroads, Intervenor.

DUKE POWER COMPANY, Petitioner,

v.

---

UNITED STATES of America and
Interstate Commerce Commission,
Respondents.

VIRGINIA ELECTRIC AND POWER
COMPANY, Petitioner,

v.

UNITED STATES of America and
Interstate Commerce Commission,
Respondents.

ALABAMA POWER COMPANY, Georgia
Power Company, Gulf Power Company,
Mississippi Power Company, and
Southern Company Services, Inc., Peti-
tioners,

v.

INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents.

EDISON ELECTRIC INSTITUTE,
Petitioner,

v.

INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents.

Nos. 82–1837, 82–1902, 82–1903, 82–2475,
82–2489, 82–2517, 83–1059 and 83–1061.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 2, 1984.

Decided May 22, 1984.

Harry H. Voigt, Washington, D.C., with whom Leonard M. Trosten, Michael F. McBride and Daniel J. Conway, Washington, D.C., for Edison Elec. Institute; William L. Slover, C. Michael Loftus and Donald G. Avery, Washington, D.C., for Western Coal Traffic League; John F. Donelan, Frederic L. Wood and John F. Donelan, Jr., Washington, D.C., for American Paper Institute, et al.; John R. Molm and Robert P. Edwards, Atlanta, Ga., for Southern Elec. System, et al., were on the joint brief, for all petitioners.

Charles Alan Stark, Atty., I.C.C., Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., Dept. of Justice, John Broadley, Gen. Counsel, I.C.C., Lawrence H. Richmond, Deputy Associate Gen. Counsel, I.C.C., John J. Powers, III and Frederick Freilicher, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondents. Robert S. Burk, Atty., I.C.C., John P. Fonte and Andrea Limmer, Attys., Dept. of Justice, Washington, D.C., also entered appearances for respondents.

Paul A. Cunningham, Washington, D.C., with whom Harry N. Babcock, Cleveland, Ohio, Robert B. Batchelder, Omaha, Neb., Emried D. Cole, Jr., Louisville, Ky., Albert B. Russ, Jr., Jacksonville, Fla., James L. Howe, III, Richmond, Va., Kenneth P. Kolson, Washington, D.C., Thormund A. Miller, San Francisco, Cal., Hanford O'Hara, Washington, D.C., Frederick W. Read, III, Omaha, Neb., Charles C. Rettberg, Jr., Cleveland, Ohio, J. Thomas Tidd, Donal L. Turkal, Washington, D.C., Richard E. Weicher, Chicago, Ill., Arthur W. Adelberg, Robert M. Jenkins, III, and Marc D. Machlin, Washington, D.C., were on the brief for intervenor, Ass'n of American Railroads, in all cases.

Before WILKEY and GINSBURG, Circuit Judges, and PALMIERI,* Senior District Judge for the Southern District of New York.

Opinion for the Court filed by Circuit Judge GINSBURG.

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

GINSBURG, Circuit Judge:

■ In these requests for review of Interstate Commerce Commission (Commission or ICC) dispositions, petitioners urge us to look behind the two standard-applying decisions addressed in their petitions: Ex Parte No. 415, *Railroad Cost of Capital—1981*, 365 I.C.C. 734 (1982), and Ex Parte No. 439, *Railroad Revenue Adequacy—1981 Determination*, 47 Fed.Reg. 52,-237 (1982). Petitioners train their fire on an earlier, standard-setting rulemaking, Ex Parte No. 393, *Standards for Railroad Revenue Adequacy*, 364 I.C.C. 803 (1981), aff'd, *Bessemer and Lake Erie R.R. v. ICC*, 691 F.2d 1104 (3d Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 2463, 77 L.Ed.2d 1340 (1983). They assert no infirmity in Ex Parte No. 415, and Ex Parte No. 439 other than the Commission's application in those two decisions of rulings made the year before in Ex Parte No. 393. In several respects, petitioners contend, standards and procedures prescribed in Ex Parte No. 393 are arbitrary, capricious, an abuse of discretion, or contrary to law.

All substantive issues petitioners raise here were litigated and decided adversely to them in a direct attack on Ex Parte No. 393 in the Third Circuit. *Bessemer and Lake Erie R.R., supra*. In the guise of a challenge to the Commission's first applications of the standards set in Ex Parte No. 393, petitioners invite us to declare a number of those standards impermissible. We hold that petitioners have returned to court too soon: they are precluded from relitigating in these cases the very same issues they unsuccessfully pressed in *Bessemer. See generally* RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982) (stating and explaining general rule of issue preclusion or collateral estoppel).

Petitioners would have the Commission reconsider the Ex Parte No. 393 standards and procedures for establishing revenue levels for market-dominant rail carriers prior to each application of the standards. But that administratively cumbersome approach is not what Congress ordered. Congress instructed the ICC to "maintain and

revise" the standards "as necessary," not in each instance in which the standards are applied. 49 U.S.C. § 10704(a)(2)–(4) (Supp. V 1981). While the legislature did require the Commission to revisit the standards periodically with a view to revision, it did not command the ICC to behave like Penelope, unravelling each day's work to start the web again the next day. *See Jorgenson v. York Ice Machinery Corp.,* 160 F.2d 432, 435 (2d Cir.) (Odyssey image there used in the context of jury performance imperfections), *cert. denied,* 332 U.S. 764, 68 S.Ct. 69, 92 L.Ed.2d 349 (1947).

Petitioners need not fear that application of preclusion doctrine in the instant cases will "estop shippers, for all time, from effectively challenging the Commission's revenue adequacy standards." Reply Brief of Petitioners at 26. We note initially that the issue preclusion barrier does not extend beyond parties to, or entities virtually represented in, *Bessemer. See Functional Music, Inc. v. FCC,* 274 F.2d 543 (D.C.Cir. 1958) (petitioner who did not seek review of FCC rule when promulgated may seek examination of the rule when agency acts to apply it), *cert. denied,* 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 60 (1959). Of more practical and immediate importance to the petitioning shippers here, the ICC is currently taking a standard-setting second look at Ex Parte No. 393, and has invited and received public comment. Ex Parte No. 393 (Sub-No. 1), *Standards for Railroad Revenue Adequacy,* 48 Fed.Reg. 10,-144 (1983).

The ICC's eventual decision in Ex Parte No. 393 (Sub-No. 1) will be standard-setting, not standard-implementing, in character, and the Commission's determinations in the renewed consideration will be open for renewed judicial review. At that time, if the Commission has resolved to maintain, not revise, standards to which the petitioning shippers object, preclusion doctrine will not bar the shippers' way to court to challenge the agency's second look. For example, petitioners may then raise the argument we decline to reach now, that the Commission (and the *Bessemer* court as well), in ruling on reserves for deferred taxes, paid insufficient attention to a deci-

sion that remains the law of this circuit, *San Antonio v. United States,* 631 F.2d 831, 847 (D.C.Cir.1980), *modified,* 655 F.2d 1341 (D.C.Cir.1981), *rev'd on other grounds sub nom. Burlington Northern, Inc. v. United States,* 459 U.S. 131, 103 S.Ct. 514, 74 L.Ed.2d 311 (1982).

■ We have reviewed and found insubstantial the variety of other "special circumstances" petitioners assert to support their plea for an immediate second court airing, despite the adjudication in *Bessemer* and the pendency before the ICC of Ex Parte No. 393 (Sub-No. 1). As to one of the two ICC decisions the instant petitions formally address, Ex Parte No. 439, a party that did not appear in *Bessemer,* Duke Power Company, appears here in the judicial review party line-up. Duke is a member of a trade association, Edison Electric Institute (EEI), that actively participated in the prior adjudication. *See Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1233–36 (2d Cir.) (judgment against trade association held binding on members), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); *Aluminum Co. of America v. Admiral Merchants Motor Freight, Inc.,* 486 F.2d 717, 720–21 (7th Cir.) (trade association members precluded from litigating claim previously decided against association), *cert. denied,* 414 U.S. 1113, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973). Duke offers no argument distinct from EEI's contentions, and points to no inadequacy in EEI's Third Circuit presentation of issues of concern to shippers situated as Duke is. Moreover, the attorneys for Duke in this court appeared for several parties in *Bessemer,* parties who join Duke in challenging Ex Parte No. 439. These circumstances reveal as barren the argument that fairness to Duke requires immediate repetition of the *Bessemer* fray, effectively, a rerun review of Ex Parte No. 393, with no real change in the cast of characters, the facts, or the legal arguments.

■ Congress, we note, does not appear to share petitioners' belief that, on a rulemaking such as Ex Parte No. 393, the Supreme Court should have the benefit of more than one circuit's opinion. *See* 28 U.S.C. § 2112(a) (1982) (providing for cen-

tralization of direct review petitions in one circuit). Nor does the thwarted preference of some of the petitioners for our circuit carry enough weight to justify a departure from the main rule of issue preclusion. *See generally* RESTATEMENT (SECOND) OF JUDGMENTS § 28 (1982).

We stress, in conclusion, the narrow compass of our disposition. We hold specifically and only: (1) the ICC was not obliged to reconsider Ex Parte No. 393 on the very first occasions in which the standards set in that rulemaking were applied; and (2) parties to *Bessemer,* and entities closely allied to them, may not obtain a second opinion on Ex Parte No. 393 from another circuit by the device employed here—petitions for review of strictly standard-applying decisions.

Because petitioners have failed to establish any solid ground for an exception to the rule of preclusion that generally governs matters such as the one at hand, *see* RESTATEMENT (SECOND) OF JUDGMENTS §§ 27, 28 (1982), the Commission's decisions to which the review petitions are formally addressed are

*Affirmed.*